# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

NICHOLAS SOMBERG,
     Plaintiff,

    v.

JESSICA R. COOPER,
in her official capacity as Prosecutor
of Oakland County, Michigan,
     Defendants

_____/

Case No.: 20-cv-11917
Honorable _____

**COMPLAINT**

PHILIP L. ELLISON (P74117)
OUTSIDE LEGAL COUNSEL PLC
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF ON VIOLATIONS OF THE FIRST AMENDMENT

NOW COMES Plaintiff NICHOLAS SOMBERG, by and through counsel, and complains as follows:

## INTRODUCTION

1.    This is a pre-enforcement action[1] involving the First and Fourteenth Amendments to the United States Constitution to be free, in an

---

[1] When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. See *Steffel v.*

open society, to *record* publicly "live-streamed" matters of public concern—

i.e. the conduct of legal proceedings at Michigan public courthouses as

undertaken by governmental officials as being broadcast publicly via live

video-audio streaming services.

2.     Defendant, a county prosecutor, has attempted and will

seemingly again attempt to prosecute a Michigan resident for making a

recording—a photographic screenshot—of a court proceeding being live-

streamed via Zoom/YouTube as a result of the COVID-19 health concern.

3.     Prosecuting a person for First Amendment activity (i.e. making

posts, video/audio recordings, and/or taking photographs of matters of public

interest) requires federal court intervention and, in the words of Defendant's

assistant prosecutor, provides these parties the opportunity "to really seek[]

guidance from the Court in future proceedings how to address these potential

issues in age of Zoom."

4.     This Court's "guidance" should direct that such porhibitions and

related prosecutions are unconstitutional under the First Amendment of the

United States Constitution.

---

*Thompson*, 415 U.S. 452, 459 (1974); see also *MedImmune, Inc. v. Genentech, Inc.*, 549
U.S. 118, 128-129 (2007). Instead, federal courts permit pre-enforcement review under
circumstances that render the threatened enforcement sufficiently imminent. See *McKay
v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**PARTIES**

5.     Plaintiff NICHOLAS SOMBERG is a resident of the State of Michigan.

6.     Defendant JESSICA COOPER is sued in her official capacity as Prosecutor of Oakland County.

**JURISDICTION**

7.     This Honorable Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343 as this case involves federal questions and federal civil rights under 42 U.S.C. § 1983.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**GENERAL ALLEGATIONS**

***The First Amendment Right to Record***

9.     The US Supreme Court has previously held that there is a First Amendment right of access to judicial proceedings. E.g., *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (criminal trials and possibly also civil trials); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press-Enterprise I*) (jury selection in criminal trials); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*Press-Enterprise II*) (certain preliminary hearings, though not grand-jury hearings).

10.     The First Amendment protects access to such proceedings because they involve "place[s] and process[es] [that] have historically been

open to the press and general public," and "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8.

11.     By its legal branches, the First Amendment extinguishes the government's burning reach in areas involving speech, religion, the press, and grievances to government officials, except for the most critical of governmental interests.

12.     Concurrent with access to public acts, multiple circuits have recognized that the First Amendment protects an individual's right *to record* matters of public interest. *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3rd Cir. 2017); *American Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 586–87 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017); see also See *Crawford v. Geiger*, 996 F. Supp. 2d 603, 615-617 (N.D. Ohio 2014) (holding that the right to openly film was clearly established by 2012, despite the absence of Sixth Circuit authority).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

13.     With technological progress and the ubiquity of inexpensive and easy-to-use computer programs and cell-phone "apps," we are now in an age where the public can record our public official' conduct (without interrupting the government officials) and easily distribute that recording widely for advocacy and other expressive purposes.

14.     This is the case our Supreme Court foreshadowed—"when the advances in these arts permit reporting… without their present hazards to a fair trial *we will have another case.*" *Estes v. Texas*, 381 US 532, 540 (1965) (emphasis added).

15.     This increase in the observation, recording, and sharing of public government institutional activity has contributed greatly to our public discussion of proper governance and is a protected First Amendment activity.

16.     There is "paramount public interest in a free flow of information to the people concerning public officials, their servants," *Garrison v. Louisiana*, 379 U.S. 64, 77 (1964), because "extensive public security and criticism" of criminal-justice system officials serves to "guard[ ] against the miscarriage of justice." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560 (1976).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

17.    As such, the First Amendment comfortably protects taking actual photographs, videos, and recordings of public court proceedings, from online streaming services, when doing so does not in any way interfere with judicial proceedings.

18.    The First Amendment "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l. Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978).

### *Attorney Somberg*

19.    Plaintiff NICHOLAS SOMBERG is a resident of Oakland County who is a duly-licensed attorney who works with and in the courts of the State of Michigan. **Exhibit E.**

20.    A substantial portion of his advocacy and legal work is using social media platforms like Facebook to post materials, discuss pending cases, critique the actions and inactions of public officials, and publicly question the policies and decisions of governments and their officials, including those in our courtrooms.

21.    Since the discovery of COVID-19 in Michigan starting in March 2020, governmental officials have rapidly enacted and otherwise changed many "typical" procedures and process of how governments and courts

operate on a daily basis. See e.g. Michigan Supreme Court, *Michigan's 'Virtual' Courtrooms Surpass 500,000 Hours of Zoom Hearings* <https://courts.michigan.gov/News-Events/press_releases/Documents/Zoom%20500000%20Media%20Release.pdf> (last accessed July 15, 2020).

22.    One important change is the mass introduction of "remote hearings" via Zoom which are then live-streamed (i.e. publicly broadcasted) via Zoom and YouTube Live. **Exhibits A, B, & C.**

23.    Included in those changes is the utilization of "live-streaming" (i.e. publicly online broadcasted) court proceedings for general public viewing and consumption. **Exhibit D**.

24.    It has generally been a positive addition which has allowed the media and the public to observe, firsthand, the proceedings of courts, observe the actual legal arguments of litigants, and reproduce materials online with further open discourse on the issues of public concern.

25.    For example, when the Michigan Court of Claims held oral arguments on the *House of Representatives v Whitmer* case, it was broadcasted publicly.

26.    Over 7,000 individuals accessed the live-stream in real-time to observe the proceedings—far more than could ever be housed within a courtroom.

27.    The press, in turn, was able to better report the nature of the case, the issues involved, and disseminate first-hand clips of the proceeding to educate, inform, and apprise the public of the heady separation of powers issue being fought between two branches of government while appearing before the third.



https://www.detroitnews.com/story/news/local/michigan/2020/05/15/judge-predicts-legislature-whitmer-fight-going-supreme-court/5197735002/

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

28.   However, the custom and practice of many state courts is to simply cause unneeded limits previously imposed (but now no longer relevant given live-streaming) to continue, i.e. the banning the real-time use of technology to make audio-video recordings of court proceedings for further dissemination and use for expressive activity.

29.   Prior to COVID-19, the only justification for preventing audio and/or audio-video recordings of live, in-person recordings of court proceedings was to prevent possible interruption of those proceedings.

30.   However, that concern is now no longer relevant in any way given that live-streaming via Zoom/YouTube is seamless and is technologically set up to not permit the observer (as a person making a potential recording from his computer or cell-phone) in any way to interact with court proceedings to cause an interruption; it is passive observation and collection of public materials.

31.   Yet, despite that change, certain Michigan courts still aspire, for unconstitutional purposes, to ban the making of photographic, audio, and/or video recordings of proceedings but have no constitutionally permissible purpose in doing so.

32.   An example of that can be found in a recent Saginaw County Circuit Court case—

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Court:    As you can see, we are proceeding virtually here today in light of the courthouses a closure to members of the public in response to the COVID-19 pandemic. We are allowed to proceed in this fashion pursuant to administrative order as long as we make a verbatim record of the proceeding. As you can see my court reporter is in the courtroom; I believe both attorneys are in agreement that they would like to proceed in this fashion...

***

The court will not allow any unauthorized reproduction or recording of this proceeding. If *anyone* engages in any reproduction or recording of this proceeding, it may result in contempt proceedings being initiated. We will proceed at this time...

https://youtu.be/fTrtsxxX_Dk (timestamp, 01:14-02:15)

33.    Courts in Oakland County has acted and undertaken similar stances for audio and video recording in their courts' proceedings as well. See **Exhibit D.**

34.    This customary practice of banning photography and recording of proceedings outside Michigan courthouses is believed to erroneously derive from Michigan Court Rule 8.115(C)(3), which reads—

> *(3) Photography and audio or video recording, broadcasting, or live streaming. Except for requests for film or electronic media coverage of court proceedings as permitted under AO No. 1989-1, the following restrictions apply to photography, audio recording, video recording, broadcasting, or live streaming in a courthouse.*
>
> *(a) In a courtroom: In a courtroom, no one may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live streaming unless that use is specifically allowed by the Judge presiding over that courtroom.*

**(b) Outside a courtroom: In areas of a courthouse other than courtrooms, no one may photograph, record, broadcast, or live stream an individual without that individual's prior express consent.**

*(c) Jurors: No one may photograph, record, broadcast, or live stream any juror or anyone called to the court for jury service.*

*(d) Local orders: By local administrative order, a court may adopt further reasonable limits on photography and audio or video recording or broadcasting in a courthouse that are not inconsistent with this rule.*

35.     However, a careful reading of this rule does not prohibit observers of public Zoom/YouTube-broadcasted proceedings, while in their homes and offices and otherwise not "in areas of a courthouse other than courtrooms," from taking photographs or self-securing audio/video recordings of the live-streaming broadcast.

36.     Instead, the prohibition created by local courts and enforced by county prosecutors seemingly is for no other purposes than to prevent to prevent dissemination of matters of public interest undertaken by publicly-elected officials (i.e. judges and prosecutors) on public property.

### *Contempt Against Plaintiff for Making Recording*

37.     Plaintiff NICHOLAS SOMBERG is a duly-licensed attorney with the State of Michigan and has an active practice which requires him to appear in state court using, in today's COVID-19 world, the Zoom meeting platform. See **Exhibit E**.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

38.    In response to COVID-19 and pursuant to its superintending control powers, the Michigan Supreme Court issued Administrative Order 2020-06 (**Exhibit B**) which "authorizes judicial officers to conduct proceedings remotely… using two-way interactive videoconferencing technology or other remote participation tools" subject to certain conditions.

39.    One of those conditions is that access to the proceeding, via use of two-way interactive videoconferencing technology or other remote participation tools, must be provided to the public either during the proceeding or immediately after via access to a video recording of the proceeding, unless the proceeding is closed or access would otherwise be limited by statute or rule.

40.    Nothing in Administrative Order 2020-06 prohibits the making of recording(s) and/or screenshot(s) of public proceedings, or otherwise using a prior-made video-recording of the proceeding for First Amendment protected purposes.

41.    On May 27, 2020, a hearing was held before the Oakland County District Court in which Plaintiff NICHOLAS SOMBERG appeared as counsel for the accused to conduct a pretrial conference.

42.    During that proceeding, Plaintiff NICHOLAS SOMBERG made a screenshot of the proceeding to later share via a social networking platform

12

to the public; the photographic screenshot depicts a still-shot photograph of the on-screen public proceedings. See **Exhibit F**.

43.    In response, Defendant, by its assistant prosecutor, brought a motion to show cause for an issuance of a finding of contempt against Plaintiff NICHOLAS SOMBERG for "being in violation of the law by taking photographs of the proceedings and posting the photographs on Facebook." **Exhibit G.**

44.    The state court motion failed to identify "the law" Plaintiff NICHOLAS SOMBERG was accused of violating.

45.    At the hearing held on the motion for a show cause order, the alternatively assigned assistant prosecutor, Brandon Barlog, informed the trial court that the contempt proceeding was premised on the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices." See **Exhibit H**.

46.    A fair and accurate copy of the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices" is attached hereto as **Exhibit D**.

47.    Defendant, by AP Barlog, point to paragraphs 3 and 4 of the May 1, 2020 Policy as the basis for Defendant's request for a finding of contempt (which includes jail time and/or a substantial fine) against Plaintiff NICHOLAS SOMBERG.

48.    Those provisions in the May 1, 2020 Policy provide that—

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

    a. *No one may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live stream unless that use is specifically allowed by the judge presiding over that courtroom through a Written Order*; and

    b. *In areas of the courthouse outside the courtroom, no may photograph, record, broadcast, or livestream an individual without their express prior consent.*

49.    In furtherance of violating the First Amendment, the Oakland County District Court has a "stamp" placed in the bottom right-hand side of the YouTube live-stream broadcasts (operated by Zoom) of the court hearing and that stamp (which is only *sometimes* visible) directs to "Do Not Record"—



50.    The state court ordered that a contested hearing would proceed against Plaintiff NICHOLAS SOMBERG at the explicit request of Defendant. **Exhibit H**.

51.    Thereafter, Plaintiff NICHOLAS SOMBERG, by his own counsel, immediately moved for and sought pre-hearing dismissal based upon the procedural and jurisdictional defects on Defendant's contempt papers under Michigan's contempt court rules and statute.

52.    The state court ultimately granted the motion but did so despite being "chagrined and troubled by the allegations." **Exhibit I**.

53.    However, Defendant's contempt request can be refiled at any time.

### *The Policy of Non-Gathering of Information*

54.    The effective prohibition sought to be imposed or effectuated by Defendant vis-à-vis the May 1, 2020 Policy (whether by photographic, audio, or video recordings) is not connected to any particular pending litigation and/or any particular case before any judge or chief judge.

55.    In reality and of true concern to elected politicians who hold public office, the existence of observable video recordings of proceedings can result in *political* harm to the person who hold the governmental position as it permits a first-hand account of actions and, in turn, allows for an easy

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

communications method to directly question the decisions and actions of the officeholder and their continued fitness for such office.

56.    For example, the person holding the position of prosecutor in a county is the highest ranking and elected law enforcement officer of that county, see *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 683; 194 NW2d 693 (1972) (prosecutor is the chief law enforcement officer of the county), whose decisions are played out in courtrooms across Oakland County.

57.    Judges in the Oakland County District Court are elected to their positions and also whose decisions are played out in courtrooms across Oakland County.

58.    There is no appeal by right or by leave to a higher appellate court for a litigant or attorney regarding the May 1, 2020 Policy or the customary ban imposed on recording proceedings.

59.    Violations of the May 1, 2020 Policy or the customary ban imposed on recording proceedings is punishable by contempt of court, which includes a fine of not more than $7,500.00, and/or jail for 93 days under the Michigan contempt statute.

60.    Plaintiff NICHOLAS SOMBERG does not wish to be subject to contempt, fined not more than $7,500.00, and/or jail for 93 days for exercising his constitutional First Amendment rights.

61.    Plaintiff NICHOLAS SOMBERG seeks to and will again exercise a right to off-site record court activities, the officials inside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest occurring within the courtrooms being live-streamed via Zoom/YouTube by the state judiciary.

62.    Plaintiff NICHOLAS SOMBERG's purpose is not to intimidate or harass witnesses or prevent the administration of justice or the conduct of trials; to the extent the state court believes otherwise, there is a constitutionally sufficient process created by the US Supreme Court to terminate public access, see *Press-Enterprise Co v Superior Court,* 464 US 501, 510 (1984)

### COUNT I
### 42 U.S.C. § 1983
### FIRST AMENDMENT VIOLATION
### RIGHT TO RECORD LIVE-STREAMED COURT PROCEEDINGS

63.    Plaintiff NICHOLAS SOMBERG incorporates by reference all prior allegations of this Complaint into this Count.

64.    Plaintiff NICHOLAS SOMBERG has the First Amendment protected right to photograph, screenshot, audio/video record, broadcast,

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

report, distribute, share, and publish photographic, audio, and video recordings of public live-streamed Michigan court proceedings without threat of or an actual prosecution by Defendant in light of its ongoing violation of federal law.

65.    Defendant has actually attempted to prosecute Plaintiff NICHOLAS SOMBERG for exercising his First Amendment protected activity.

66.    To the extent that Defendant relies upon May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices," such is unconstitutional as being in existence and being enforced by Defendant in violation of the First Amendment.

67.    By actions taken under the color of Michigan law, Defendant has violated and/or will violate Plaintiff NICHOLAS SOMBERG's First and Fourteenth Amendments rights by taking or having undertaken a credible threat of prosecution as to Plaintiff's right to record matters of public concern by public officials being publicly broadcasted without needing the be specifically allowed by the judge presiding over that courtroom.

68.    For state action to survive a First Amendment challenge, the regulation must be narrowly tailored to advance a compelling state interest. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989).

18

69.    The state "law" claimed by Defendant in the prior and imminent prosecution of Plaintiff NICHOLAS SOMBERG is not the result of compelling government interest; nor is that interest narrowly tailored as required by the First Amendment.

70.    Plaintiff NICHOLAS SOMBERG wants to, intends to, and desires to make recordings of public proceeding being publicly broadcasted via live-streamed court proceedings for reposting, broadcasting, commentary, expressive activity, and advocacy, but has been unconstitutionally chilled and prevented by the fear of the credible and ongoing threat of prosecution by Defendant undertaken in violation of the First Amendment.

71.    As applied to the courtrooms in Oakland County, Defendant's assertion of and criminal prosecution via a law, custom, and practice of treating the taking photographs/screenshots and/or audio/video recording, broadcasting, or reposting of publicly live-streamed proceeding as "being in violation of the law" is contrary to the First Amendment and the "law" being enforced is not a narrowly tailored means, the least restrictive alternative, a necessary means, or a directly and palpably connected means to further any sufficient, substantial or compelling governmental interest.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

**RELIEF REQUESTED**

72.     Plaintiff NICHOLAS SOMBERG requests that this Court grant the following:

a. Enter a declaration that the prohibition to record matters of public interest and public officials in the performance of their public duties as being publicly broadcasted violates the First and Fourteenth Amendments to the United States Constitution and cannot be enforced by Defendant;

b. Enter a declaration that the "Do Not Record" stamp on Michigan's Zoom/YouTube broadcasts do not have any legal effect as the command thereof is in violation of the First and Fourteenth Amendments to the United States Constitution and cannot be enforced by Defendant;

c. To the extent required, enter a declaration that the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices" is unconstitutional under the First Amendment and cannot be enforced by Defendant;

d. Enter a declaration that Plaintiff's First and Fourteenth Amendments rights were violated;

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

e.  Enter preliminary and permanent prospective injunction prohibiting and enjoining Defendant, to the extent not prohibited under the Eleventh Amendment, from enforcing the recording prohibition(s), the "Do Not Record" stamp on Michigan's Zoom/YouTube broadcasts, and/or the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices;"

f.  Award costs and attorney fees pursuant to 42 U.S.C. § 1988; and

g.  Award all other relief that is just and proper.

Date: July 15, 2020                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
OUTSIDE LEGAL COUNSEL PLC
PHILIP L. ELLISON (P74117)
Counsel for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com