UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

N<small>ICHOLAS</small> S<small>OMBERG</small>,

    Plaintiff,

    v.

J<small>ESSICA</small> R. C<small>OOPER</small>,

    Defendant.

_____/

Case No. 20-cv-11917

U.S. D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#7]**

**I. I<small>NTRODUCTION</small>**

On July 15, 2020, Plaintiff Nicholas Somberg ("Plaintiff") filed the instant action against Defendant Jessica R. Cooper ("Defendant") in her official capacity as Prosecutor of Oakland County, Michigan. ECF No. 1. Plaintiff brings a challenge on the right to record and photograph publicly "live-streamed" matters of public concern. *Id.* at PageID.1–2.

Presently before the Court is Plaintiff's Motion for Summary Judgment. ECF No. 7. This Motion is fully briefed. The Court held a hearing on this matter on August 5, 2021. For the reasons that follow, the Court will **DENY** Plaintiff's Motion for Summary Judgment [#7].

1

## II. BACKGROUND

The instant action, brought pursuant to the First Amendment and 42 U.S.C. § 1983, stems from a pretrial conference in the 52nd District Court, where Plaintiff appeared on behalf of his client via Zoom. ECF No. 7, PageID.93. During this proceeding, which was also being live-streamed on YouTube, Plaintiff took a screenshot to later share on a social networking platform. *Id.* The screenshot depicts a still-shot of the on-screen public proceedings. ECF No. 7-7. Defendant highlights that when Plaintiff posted the photograph to his Facebook, Plaintiff added "disparaging remarks" about the assistant prosecutor on the case. ECF No. 13, PageID.171, 173.

The Oakland County Prosecutor's Office learned of Plaintiff's Facebook post the following day. *Id.* at PageID.173. According to Defendant, the Oakland County Prosecutor's Office was concerned that Plaintiff's actions should be brought to the presiding judge's attention since it potentially violated the Michigan Court Rules, the court's local policy, and/or the Rules of Professional Responsibility. *Id.* at PageID.173–74. Accordingly, on May 28, 2020, Assistant Prosecutor Qamar Enayah filed a motion to show cause to hold Plaintiff in contempt for "being in violation of the law by taking photographs of the proceedings and posting the photographs to Facebook." ECF No. 7-8, PageID.121. The Oakland County District Court noticed the motion to show cause for a hearing for June 2, 2020. ECF No. 7-

10, PageID.137. The court also set a contempt hearing for June 24, 2020. *Id.* Plaintiff subsequently sought pre-hearing dismissal through a series of motions to dismiss based upon "procedural and jurisdictional defects." ECF No. 7, PageID.95.

At the hearing on June 2, 2020, the Oakland County Prosecutor's Office pointed to paragraphs three and four of the court's May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices," which reads, in relevant part:

> (3) No one may use a portable electronic device(s) to take photographs or for audio or video recording, broadcasting, or live streaming unless that use is specifically allowed by the judge presiding over that courtroom through a written Order.
>
> (4) In areas of the courthouse outside the courtroom, no one may photograph, record, broadcast, or live stream an individual without their express prior consent.[1]

ECF No. 7-9, PageID.127; ECF No. 7-5, PageID.117. Plaintiff notes in his present Motion that the court has a "stamp" placed in the bottom right-hand side of the YouTube live-stream broadcasts in furtherance of the aforementioned policy. ECF No. 7, PageID.94. The "stamp" reads: "Do Not Record." *Id.* at PageID.94–95.

On July 10, 2020, the court issued an opinion and order which granted Plaintiff's motions to dismiss based on several procedural irregularities. ECF No.

---

[1] At the hearing, Defendant also mentioned AO No. 1989-1 was at issue. This order permits an individual to receive permission from a presiding judge to record or broadcast court proceedings. ECF No. 13, PageID.176 n.2. According to Section 2(a)(i), "electronic media coverage shall be allowed upon request in all court proceedings." *Id.*

7-10, PageID.143.  The court therefore did not consider the merits of Plaintiff's conduct at the Zoom proceeding.  *Id.*  The court noted, however, that it was "chagrined and troubled by the allegations." *Id.*  Defendant denotes that the Oakland County Prosecutor's Office did not appeal the court's dismissal of the criminal contempt charge.  ECF No. 13, PageID.177.  Defendant further asserts that "no one from the Prosecutor's Office has sought to reinstitute the contempt proceedings against Plaintiff at any time." *Id.* (footnote omitted).  Plaintiff emphasizes that Defendant's contempt request can be refiled at any time.  ECF No. 7, PageID.95.

Plaintiff then filed the present action before this Court on July 15, 2020.  ECF No. 1.  In his Complaint, he alleges a First Amendment violation of his "protected right to photograph, screenshot, audio/video record, broadcast, report, distribute, share, and publish photographic, audio, and video recordings of public live-streamed Michigan court proceedings without threat of or an actual prosecution by Defendant[.]" *Id.* at PageID.17–18.  Plaintiff asserts that "he does not wish to be subject to contempt, fined not more than $7,500.00, and/or jail for 93 days for exercising his constitutional First Amendment rights." *Id.* at PageID.17.  Moreover, he claims that he "seeks to and will again exercise a right to" make digital records of publicly "live-streamed" matters of public concern by the state judiciary.  *Id.*

In his present Motion, Plaintiff moves for summary judgment.  ECF No. 7.  He argues that the First Amendment includes an individual's "right to record." *Id.*

4

at PageID.98. Moreover, he argues that his past and future activities of making audio-video and photographic records of online public court proceedings are protected by the First Amendment. *Id.* at PageID.100. Defendant opposes Plaintiff's requested relief, emphasizing that the prohibition at issue in this case only limits the use of portable electronic devices in courthouses and/or courtrooms. ECF No. 13, PageID.179. Accordingly, Defendant argues that there has been no infringement upon a First Amendment right of access to trial proceedings. *Id.* Moreover, Defendant contends that Plaintiff does not have a First Amendment right to record trial proceedings. *Id.* at PageID.180.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. ANALYSIS

Plaintiff contends that, due to technological advances, there is an opportunity to reestablish the First Amendment's assurance of a free and open society. ECF No. 7, PageID.97. Specifically, Plaintiff asserts that he has the right to "photograph, screenshot, audio/video record, broadcast, report, distribute, share, and publish photographic, audio, and audio-video recordings of public Michigan court proceedings being live-streamed worldwide[.]" *Id.* at PageID.101. Stated differently, Plaintiff argues that there is a constitutional right to record live trial proceedings.

As an initial matter, the Court agrees with Plaintiff to the extent that Defendant impermissibly seeks both a denial of the present Motion and makes a request to dismiss the Complaint with prejudice in her Response brief. *See* ECF No. 14, PageID.256. Defendant's brief fails to comply with this Court's Electronic Filing Policies and Procedures. Specifically, Rule 5 requires that motions must not be combined with any other stand-alone document. R5(f), E.D. Mich. Elec. Fil. Pol. & Pro. While Defendant does not appear to include a separate Motion, the Court denotes her written requests for the Court to dismiss this case with prejudice throughout her present filing. ECF No. 13, PageID.168, 180, 194. The Court will

exclusively analyze Plaintiff's present Motion and Defendant's arguments in response to such Motion. Should Defendant wish to move for the requested relief, either pursuant to Federal Rules of Civil Procedure 12 or 56, she may file a separate brief in compliance with this Court's rules.

The Court now turns to the merits of Plaintiff's present Motion. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). The question before the Court is whether Plaintiff is entitled under the First Amendment to obtain photo-audio-video records of courtroom proceedings streamed outside of the courtroom. In his present Motion, Plaintiff contends that he has the First Amendment right to "photograph, screenshot, audio/video record, broadcast, report, distribute, share, and public photographic, audio, and audio-video records of public Michigan court proceedings being live-streamed worldwide when doing such does not interfere, affect, or hamper the administration of justice." ECF No. 7, PageID.101.

The First Amendment reads in relevant part: "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. It is well-settled that the First Amendment guarantees the right of public access to criminal trials, including the right to listen, take notes, and to disseminate and publish what an individual

7

observes at the proceeding. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575–80 (1980). This First Amendment's right to access criminal proceedings has been expanded to several other proceedings outside of the criminal-judicial context. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002) (collecting cases). Underlying the right of access is "the common understanding that a major purpose of the [First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one." *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 604-05 (1982). Public scrutiny also "fosters an appearance of fairness" and "permits the public to participate in and serve as a check upon the judicial process." *Id.* at 606.

The Supreme Court first analyzed the constitutional implications of electronic media in the courtroom in *Estes v. Texas*, 381 U.S. 532 (1965). There, the Supreme Court held that a criminal defendant was deprived of his right to due process by the broadcasting of his trial. Justice Clark's plurality opinion disposed of the question of whether First Amendment interests were implicated, noting that neither the First nor Sixth Amendment "speaks of an unlimited right of access to the courtroom on the part of the broadcast media." *Id.* at 539–40 (citation omitted). He further opined that "[w]hen the advances in the[] arts permit reporting by printing press or by

8

television without their present hazards to a fair trial we will have another case." *Id.* at 540.

The Supreme Court later revisited *Estes* in its *Chandler v. Florida*, 449 U.S. 560 (1981) decision. In *Chandler*, the Supreme Court upheld the constitutionality of Florida's Judicial Canon, which authorized judges to permit audio-visual coverage of court proceedings, even over a defendant's objection in a criminal proceeding. The *Chandler* court determined that the law at issue was not *per se* unconstitutional, reasoning that its decision in *Estes* did not impose a *per se* constitutional ban on televising court proceedings. 449 U.S. at 573–74 (citation omitted). Importantly, the *Chandler* court noted that the media does not have a constitutional right to have electronic equipment in the courtroom:

> While we have concluded that the due process clause does not prohibit electronic media coverage of judicial proceedings per se, by the same token we reject the argument of the [media] that the first and sixth amendments to the United States Constitution mandate entry of electronic media into judicial proceedings.

*Id.* at 569. Accordingly, as another court within this District explained, *Chandler* holds "only that televising criminal trials is constitutionally permissible. It does not hold that it is constitutionally required." *McKay v. Federspiel*, No. 14-cv-10252, 2014 WL 1400091, at *5 (E.D. Mich. Apr. 10, 2014) (Ludington, J.).

The right to access, like many aspects of the First Amendment, is not absolute. *Id.* For a state action to survive a First Amendment challenge, the enforced

9

regulation must be narrowly tailored to advance a compelling state interest. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989).

In his present Motion, Plaintiff cites to several cases from neighboring circuits for the proposition that the First Amendment protects an individual's right to record matters of public interest: *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Phila.*, 862 F.3d 353, 358 (3rd Cir. 2017); *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 586–87 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017). Importantly, these decisions involved different kinds of public spaces. The kinds of public spaces at issue in the aforementioned circuit court decisions are not necessarily applicable to judicial proceedings. Indeed, as Defendant correctly highlights in her Response, ECF No. 13, PageID.190, courtrooms are "nonpublic" fora, where First Amendment rights "are at their constitutional nadir," *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citation omitted). They are different from street corners and city parks. As the Sixth Circuit explained, "the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech." *Id.* (citations omitted). Courtrooms' participants, including observing members of the public, are subject to unique constraints that do not apply in other public spaces.

At the hearing, Plaintiff suggested that the First Circuit's decision in *Glick v. Cunniffee* is particularly illustrative for the present matter. However, this decision did not involve an individual's access to a courtroom proceeding. Rather, the plaintiff filmed the defendant police officers in the Boston Common. The *Glick* court emphasized that this public space was "the oldest city park in the United States and the apotheosis of a public forum. In such traditional public spaces, the rights of the state to limit the exercise of First Amendment activity are 'sharply circumscribed.'" 655 F.3d at 84 (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983)). Notably, the *Glick* court specifically analyzed the narrow question of whether there was a constitutionally protected right to videotape police carrying out their duties in public. 655 F.3d at 82. In finding that the First Amendment protects this specific activity, it explained:

> In our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights. *See City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63, 107 S.Ct. 2502. The same restraint demanded of law enforcement officers in the face of "provocative and challenging" speech, *id.* at 461, 107 S.Ct. 2502 (quoting *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)), must be expected when they are merely the subject of videotaping that memorializes, without impairing, their work in public spaces.

*Id.* at 84.

Similarly, the Third Circuit's decision in *Fields v. City of Phila.* did not involve access to a court proceeding. There, plaintiffs brought an action against the City of Philadelphia and certain police officers for retaliation for photographing and recording police activity in arresting protestors in public places: the City's Convention Center and a public sidewalk. 862 F.3d at 355. The *Fields* court held that the plaintiffs had a First Amendment right to record police officers conducting official police activity in public areas. *Id.* at 359–60. In making this finding, the *Fields* court emphasized the importance of the right to access "information regarding public *police activity*," as such information "leads to citizen discourse on public issues[.]" *Id.* at 359 (citations omitted) (emphasis added).

To look at one other cited circuit decision, the Seventh Circuit implied in *Am. C.L. Union of Ill. v. Alvarez* that there was a First Amendment right to make audiovisual recordings of police officers performing their duties in public spaces. There, the ACLU argued that an Illinois wiretapping statute, which criminalized the audio recording of police officers, was unconstitutional as applied to its planned "police accountability program." Relying in part on the First Circuit's decision in *Glick*, the *Alvarez* court determined that there was a First Amendment right to gather information about government officials performing their duties in public, 679 F.3d at 600–01, and that the wiretapping statute was likely to fail intermediate scrutiny, *id.* at 604–08.

Even if this Court were to assume that the aforementioned decisions affirmatively stand for the proposition that there is a First Amendment right to record matters of public interest extending to courtroom proceedings, these decisions do not indicate that this right is clearly established law in the Sixth Circuit. These out-of-circuit decisions—which specifically analyzed § 1983 claims arising from the recording of law enforcement conduct in public spaces not involving courtrooms—do not convince this Court at this time that Plaintiff is entitled under the First Amendment to obtain photo-audio-video records of courtroom proceedings that are live-streamed.

The Court instead is persuaded by another court within this District that determined there is no First Amendment right to record courtroom events. *See McKay v. Federspeil*, 22 F. Supp. 3d 731, 736 (E.D. Mich. 2014). While the Court agrees with Plaintiff that the *McKay* decision is not binding on this Court,[2] it finds that the court's reasoning is persuasive for the present matter. In *McKay*, the plaintiff argued that an electronic device order in the Saginaw County Courts violated the First, Fourteenth, and Fifth Amendments to the United States Constitution. Similar to the present matter, the plaintiff did not allege that he requested or had been denied

---

[2] The Court denotes that on appeal, the Sixth Circuit determined that the plaintiff lacked standing to bring his First Amendment claims. *McKay v. Federspiel*, 823 F.3d 862, 870 (6th Cir. 2016). The Sixth Circuit thus expressed no opinion on the merits of the plaintiff's First Amendment arguments. *Id.*

judicial permission to use a prohibited electronic device, nor did he allege any attempts to enter the courthouse with such prohibited devices. Plaintiff instead maintained, as he does here, that he did not wish to be subject to contempt for exercising his asserted constitutional rights to film and record judicial proceedings.

The *McKay* court ultimately concluded that the First Amendment right of access should not be extended to include the ability to record courtroom events using electronic media. 22 F. Supp. 3d at 736. The court emphasized Supreme Court precedent which has established that there is no First Amendment right to have electronic media in the courtroom. Moreover, the court rejected the plaintiff's claim that because a courtroom is a public place, "it is incongruous that a placed recognized by the Supreme Court as being a 'public place' with 'government officials engaged in their duties' could be deemed a First Amendment free-zone as to recording—a type of protected activity." *Id.* at 735.

Here, Plaintiff presents a nearly identical argument. This Court disagrees with Plaintiff that his case is affirmatively distinguishable based on the fact that he was physically "far outside the courtroom." ECF No. 14, PageID.259 (emphasis omitted). The Oakland County District Court conducted the virtual pretrial hearing as if it were being conducted within the four walls of the courtroom. This Court declines to find a distinction between an in-person and a virtual proceeding for purposes of establishing the asserted right to record. In both scenarios, the interested

parties must "conduct themselves with decorum, and observe the trial process." *Estes*, 381 U.S. at 588 (Harlan, J., concurring). In both scenarios, any individual has the ability to request a transcript of a proceeding should they desire to do so. And in both scenarios, any individual may attend, observe, and subsequently comment on the activities of public officials within the courtroom, either by physically arriving at the courtroom or accessing a court-provided online link.

Accordingly, there is no prohibition against Plaintiff's ability to disseminate a desired message and otherwise communicate to his desired platforms that occurred during a court proceeding, either in-person or virtual. This Court also emphasizes that Plaintiff can obtain transcripts to these proceedings at any time. These circumstances demonstrate the courtroom is not closed off to the public and does not interfere with the First Amendment's assurance of a free and open society. Indeed, these activities fulfill the two constitutional pillars asserted by Plaintiff—(1) "gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of government affairs," *Glick*, 655 F.3d at 82–83, and (2) "extensive public security and criticism" of the judicial system's officials serves to "guard[] against the miscarriage of justice," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560 (1976). ECF No. 14, PageID.262.

In sum, the Court concludes that the Oakland County District Court courtrooms remain open to the public via live-stream broadcasts. Nothing in the challenged policy prevents Plaintiff or any other member of the bar or public from attending the virtual proceedings. Accordingly, as the *McKay* court found, the First Amendment right at issue in *Richmond Newspapers* is not implicated in the present case. *McKay*, 22 F. Supp. 3d at 735–36. The Court declines to adopt Plaintiff's assertion that there is a First Amendment right to "photograph, screenshot, audio/video record, broadcast, report, distribute, share, and public photographic, audio, and audio-video records of public Michigan court proceedings being live-streamed worldwide[.]" ECF No. 7, PageID.101. The Court will thus deny Plaintiff's present Motion.

## V. CONCLUSION

For the reasons articulated above, Plaintiff's Motion for Summary Judgment [#7] is **DENIED**.

**IT IS SO ORDERED.**

s/Gershwin A. Drain<br>
GERSHWIN A. DRAIN<br>
UNITED STATES DISTRICT JUDGE

Dated: August 10, 2021

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 10, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager