# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NICHOLAS SOMBERG,
    Plaintiff,

    v.

KAREN D. MCDONALD,
in her official capacity as Prosecutor
of Oakland County, Michigan,
    Defendants

_____/

Case No.: 20-cv-11917
Honorable Gershwin A. Drain

**RESPONSE**

PHILIP L. ELLISON (P74117)
OUTSIDE LEGAL COUNSEL PLC
Attorney for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

AARON C. THOMAS (P55114)
BROOKE E. TUCKER (P79776)
Attorneys for Defendant
1200 N. Telegraph Road, Bldg. 14E
Pontiac, MI 48341-0419
(248) 975-9616
thomasa@oakgov.com
tuckerbe@oakgov.com

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## COUNTER QUESTION(S) PRESENTED

I.  Does the First Amendment protect the making of digital recordings (i.e. photographs and videos) of public court proceedings from online streaming services being broadcasted worldwide, when doing so does not in any way interfere with any judicial proceedings?

Plaintiff answers:      Yes

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

## MOST APPLICABLE AUTHORITY

*Smith v. Cumming*, 212 F.3d 1332 (11th Cir. 2000)

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)

*ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017)

*Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017)

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)

*Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022)

*Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022)

## INTRODUCTION

Proceedings in a courtroom are of the highest public interest as "what transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). This case brings a challenge not regarding access to or activities in the courtroom, but rather the right to record and photograph publicly livestreamed matters of public concern—i.e. the conduct of legal proceedings at Michigan public courthouses being broadcasted worldwide via live video-audio streaming services to outside the courtroom. With technological progress and the ubiquity of inexpensive and easy-to-use computer programs and cell-phone "apps," we are now in an age where citizens can record their public officials' conduct—without in any way interrupting the public officials or their public duties—and easily distribute that digital recording widely for commenting, advocacy, and other expressive purposes. It is "unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property" when "the recording does not interfere with the performance of the official's duties." *Price v. Garland*, 45 F.4th 1059, 1071 (D.C. Cir. 2022). The current case is what our Supreme Court foresaw—"when the advances in these arts permit reporting… without their present hazards to a fair trial we will have another case." *Estes v. Texas*, 381 U.S. 532, 540 (1965). Today is the day.

**BACKGROUND**

Since the discovery of COVID-19 in Michigan starting in March 2020, governmental officials have rapidly enacted and otherwise changed many "typical" procedures and processes of how governments and courts operate on a daily basis. One important change is the mass introduction of "remote hearings" that are livestreamed[1] (i.e. publicly broadcasted) via Zoom/YouTube in Michigan. **Exhibits A, B, & C**; see also Michigan Supreme Court, *Michigan Courts Log More Than 3 Million Hours of Zoom Hearings,* May 7, 2021, *available at* https://bit.ly/3AD6wDX. It has been a positive addition, which has allowed the media and the public to observe, firsthand, the proceedings of courts, to observe the actual legal arguments of litigants and their counsel, and to reproduce materials online with further open discourse on issues of public concern.

For example, when oral arguments on the now-famous *House of Representatives v. Whitmer* case was held, it was broadcasted by Zoom/YouTube livestreaming. Literally *thousands* of viewers accessed and watched the real-time livestream to observe—far more than could ever be physically in the courtroom. The press was also able to better report the

_____

[1] Livestreaming means publicly accessible online broadcasting for general public viewing, observation, and consumption

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

case, present the issues involved, and disseminate first-hand clips of the proceeding to educate, inform, and apprise the public of the heady separation of powers issue being fought.



Craig Mauger, *Judge Predicts Legislature-Whitmer Fight Going to Supreme Court*, The Detroit News, May 15, 2020, *available at* https://bit.ly/3HabEBZ.[2] It was impressive.[3]

---

[2] Interestingly, no one has sought to have the Detroit News or the AP News Service held in contempt of court for posting similar screenshots and rebroadcasting portions of the court proceedings in *House of Representatives*.

[3] Occasionally it has led to humorous accidents too. *Lawyer Who Couldn't Turn Off Cat Filter In Zoom: I Don't Know How It Got On*, https://youtu.be/m5r1oGZOKZ0.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

However, the "old" practices of many state courts die hard and remain as needless limitations that harm the public's rights. Prior to COVID-19, the material (and frankly practical) justification for prohibiting citizens from entering the courtroom and self-securing photographic and/or audio-video recordings of live, in-person recordings of court proceedings was possible interruptions. However, that concern is now no longer relevant given that live-streaming via Zoom/YouTube is seamless and is technologically broadcasted not to permit the citizen-observer (as a person making a potential recording from his computer or cell-phone) to interact with court proceedings and cause an interruption. It is completely passive observation and collection of publicly-made materials made outside the courtroom regarding activities occurring inside the courtroom. Thousands of hearings are heard online weekly. This Court can pick from among the hundreds of hearings held throughout Michigan each business day. See https://micourt.courts.michigan.gov/virtualcourtroomdirectory/.

Yet, despite this sea change, Michigan officials still crave to ban (and punish) the making of photographic, audio, and/or video recordings of judicial proceedings. Information-gathering prohibitions utilized by local courts (like these) and enforced by county prosecutors' offices (like what happened in this case) are undertaken seemingly for no other purposes than to prevent

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

public dissemination and discussion of matters of public interest undertaken by publicly-elected officials (i.e. judges and prosecutors) on public property. That is unreasonable and violates the First Amendment.

## FACTS

Plaintiff Nicholas Somberg is a duly-licensed attorney with an active practice which requires him to appear in state courts using, in today's COVID-19 world, the Zoom meeting platform. **Exhibit J, ¶3.** Defendant Karen McDonald is the current[4] elected prosecutor of Oakland County and is sued in her official capacity. In response to COVID-19 and pursuant to its superintending control powers, the Michigan Supreme Court issued Administrative Order 2020-06 which "authorizes judicial officers to conduct proceedings remotely… using two-way interactive video-conferencing technology or other remote participation tools" subject to certain conditions. See **Exhibits A and B**. One of those conditions is that access to the proceeding, via use of two-way interactive videoconferencing technology or other remote participation tools, must be provided to the public either during the proceeding or immediately after via access to a video recording of the proceeding, unless the proceeding is closed or access would otherwise be

---

[4] Her predecessor, Jessica Cooper, held this office (and as originally named) until Ms. McDonald defeated her in the November 2020 election. For purposes of this case and given that the defendant was sued in her official capacity, Defendant McDonald will be used.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

limited by statute or rule. *Id.* Since this case has started, the Michigan Supreme Court has adopted the standards into the Michigan Court Rules. See *In re Rescission of Administrative Orders* (ADM No. 2020-08) *available at* https://bit.ly/3HcGw4K. Nothing in Administrative Order 2020-06 (or the newly amended court rules) prohibits the making of recording(s) and/or screenshot(s) of public proceedings, or otherwise prior-made video-recording(s) of the proceedings (on YouTube) for First Amendment protected purposes.

The genesis of this case occurred at a state court hearing held on May 27, 2020 before the Oakland County District Court in which Plaintiff Somberg appeared as counsel for a criminal defendant. **Exhibit J, ¶4.** He presented himself by Zoom to conduct a pretrial conference. During that proceeding, Plaintiff Somberg made a screenshot of the livestream to later share via a social networking platform to the public. **Exhibit F.** The photographic screenshot depicts a still-shot photograph of the public proceedings. In response, Defendant McDonald, by an authorized assistant-prosecutor, filed a motion to show cause for an issuance of a finding of contempt against Plaintiff Somberg for "being in violation of the law by taking photographs of the proceedings and posting the photographs on Facebook." **Exhibit G.** The assistant prosecutor's motion failed to identify "the law" Plaintiff Somberg

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

was accused of violating.

At the hearing held on the motion for a show cause order, an alternatively assigned assistant prosecutor, Brandon Barlog, informed the trial court that the contempt proceeding was premised on the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices."[5] See **Exhibits D and H.** Defendant, by AP Barlog, pointed to paragraphs 3 and 4 as the basis for contempt (which includes jail time and/or a substantial fine). Those provisions in the May 1, 2020 Policy provide that—

a.   No one may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live stream unless that use is specifically allowed by the judge presiding over that courtroom through a Written Order; and

b.   In areas of the courthouse outside the courtroom, no one may photograph, record, broadcast, or livestream an individual without their express prior consent.

**Exhibit D.** In furtherance of the policy, the Oakland County District Court has a "stamp" placed in the bottom right-hand side of the YouTube livestream (operated in coordination with Zoom) of the court hearing and that stamp (which is only *sometimes* visible) directs viewers to "Do Not Record"—

---

[5] A copy of the May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices" is downloadable at https://bit.ly/May2020Policy.



On the motion for show cause, the Oakland County District Court ordered that a contested hearing would proceed against Plaintiff Somberg at the request of Defendant McDonald. Thereafter, Plaintiff Somberg, by his own counsel, immediately sought dismissal based upon procedural defects within Defendant's contempt papers. A state court eventually granted the motion, but did so despite being "chagrined and troubled by the allegations." **Exhibit I**. What "being chagrined and troubled" means is unknown. However, Defendant's contempt request can be refiled at any time, even today. **Exhibit J, ¶9.** It has never been disavowed.

Plaintiff Somberg brought an action in the District Court premised on the First Amendment and 42 U.S.C. § 1983 because he does not wish to be

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

subject to contempt, fined not more than $7,500.00, and/or jail for 93 days for exercising his First Amendment rights. See Mich. Comp. L. § 600.1715; **Exhibit J, ¶10.** Plaintiff Somberg seeks to, wants to, and will again exercise a right to off-site record court activities, the officials inside the courtroom in the performance of their official duties, the judge in the performance of his or her duties, and other activities of public interest occurring within the courtrooms being livestreamed via Zoom/YouTube by the state judiciary. **Exhibit J, ¶11.**

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, (1986). The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the "nonmoving party must come forward with specific

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is agreed that there is no material questions of fact. The question is one of constitutional law. However, Plaintiff has previously asserted (and reaffirms here) that he is entitled to summary judgment in his favor. Defendant is not entitled to summary judgment and such should be rejected.

## COUNTER ARGUMENT

Our First Amendment rights are extremely important. In fact, it is recognized that the loss of First Amendment freedoms, even over minimal periods of time, causes irreparable injury. *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1078 (6th Cir. 1994) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). This Court is asked to affirm the First Amendment's assurance that a free and open society includes the ability to make audio-video recordings and photographs of publicly broadcasted legal proceedings at Michigan public courthouses via live video-audio streaming services. It is "unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property" when "the recording does not interfere with the performance of the official's duties." *Price*, 45 F.4th at 1071. There is "paramount public interest in a free flow of information" concerning public officials, *Garrison v.*

*Louisiana*, 379 U.S. 64, 77 (1964), because "extensive public security and criticism" of criminal-justice system officials serves to "guard[ ] against the miscarriage of justice." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560 (1976). An increase in the observation, recording, and sharing of public institutional activity contributes and will contribute greatly to our public discussion and discourse of proper governance. And, it is a protected First Amendment activity.

## I.   The First Amendment "right to record"

As a threshold matter, there is a First Amendment right of access to judicial proceedings. E.g., *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); see also *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501 (1984) (*Press-Enterprise I*); *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1 (1986) (*Press-Enterprise II*). The First Amendment protects access to such proceedings because they involve "place[s] and process[es] [that] have historically been open to the press and general public," and "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. In light of that, the Michigan Supreme Court mandates that when a Michigan court is using "remote participation technology..., courts must... provide access to the public either during the proceeding or immediately after via access to a video recording

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

of the proceeding, unless the proceeding is closed or access would otherwise be limited by statute or rule." *In re Rescission of Administrative Orders* (ADM No. 2020-08) *available at* https://bit.ly/3HcGw4K (New Rule 2.407(G)(4)).[6]

Secondly but similarly from "access" rights, multiple federal circuits have recognized that the First Amendment protects an individual's right *to record* matters of public interest. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011). And there is a significant volume of precedent protecting the creation of information in order to protect its later dissemination. *Id.*; *Fields v. City of Phila.*, 862 F.3d 353, 359 (3rd Cir. 2017) ("recording police activity in public falls squarely within the First Amendment right of access to information."); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ("the First Amendment protects the act of making film, as there is no fixed First Amendment line between the act of creating speech and the speech itself."); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (holding that there is a right to record police officers in public); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (noting plaintiff's "First

---

[6] To the extent Defendant would argue that a transcript can be procured in lieu of recording, courts have routinely rejected the bare transcribed word as an adequate substitute. "One cannot transcribe an anguished look or a nervous tic[; t]he ability to see and to hear a proceeding as is unfolds is a vital component of the First Amendment right of access — not, as the government describes, an incremental benefit." *ABC, Inc. v. Stewart*, 360 F.3d 90, 99 (2nd Cir. 2004).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

Amendment right to film matters of public interest"); *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022) ("there is a First Amendment right to film the police performing their duties in public"); see also *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1195-1197 (10th Cir. 2017) (finding a free-speech right in the collection of observed resource data). The "First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Indeed, no circuit considering the issue has held there is no First Amendment right to record public officials in public places. See *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 831-832 (1st Cir. 2020) ("while some courts of appeals have held that this right to record is not clearly established in some contexts for purposes of qualified immunity, none has held that the right does not exist.").[7] In short (and as stated previously), "these cases as standing for the proposition that it is unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property, so long as the recording does not interfere with the performance of the official's duties." *Price*, 45 F.4th at 1071.

---

[7] And a "trial courtroom" is undisputedly a "public place." *Richmond Newspapers*, 448 U.S. at 578.

Third, the First Amendment also "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978). There is a right to "receive information and ideas," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976), and there is "an undoubted right to gather news from any source by means within the law," *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978). As such, "[a] corollary to this principle is that the First Amendment protects the act of making film." *Turner,* 848 F.3d at 688-689. "Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs." *Glik*, 655 F.3d at 82-83.

With these three major legal First Amendment pillars in mind, the First Amendment easily and comfortably protects the public's making of digital recordings (i.e., photographs and videos) of public court proceedings from online streaming services being broadcasted worldwide. Plaintiff Somberg has the First Amendment right to photograph, screenshot, audio/video record, broadcast, report, distribute, share, and publish photographic, audio, and audio-video recordings of Michigan court proceedings being publicly

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

livestreamed.[8] This is especially true when all recording activities totally and completely take place off-site from the courthouse via passive non-interruptive recording methods. By exercising his First Amendment rights, Plaintiff Somberg must be free from government interference, including improper criminal prosecution. Defendant McDonald, while acting under the color of law, improperly enforced a no-recording ban contrary to the First Amendment when seeking criminal contempt against a citizen-recorder.[9] Summary judgment must fail under the Section 1983 lawsuit.

## II. Defendant McDonald's arguments fail.

Defendant McDonald's arguments to the counter are scattershot and then fail. She first suggests that there is a right to record publicly broadcasted proceedings only after "first requesting the presiding judge's permission." **MSJ, ECF No. 31, PageID.377.** We know that notion is incorrect. The

---

[8] The provisions of 42 U.S.C. § 1983 serve as the legal vehicle for a plaintiff to obtain relief for violations of the Constitution. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). A claimant must show "1) the deprivation of a right secured by the Constitution… and 2) the deprivation was caused by a person acting under color of state law." *Simescu v. Emmet Cnty. Dep't. of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

[9] Admittedly, First Amendment rights are not absolute. However, Defendant cannot meet her constitutional burden otherwise. For state action to survive a First Amendment challenge, the enforced regulation must be narrowly tailored to advance a compelling state interest. See *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989). Here, there is neither a compelling interest nor narrow tailoring.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

exercise of First Amendment rights cannot be based on the discretionary whim of a government official. There is "time-tested knowledge" in the area of free expression that a licensing or permission-based based process which places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988). Such needing of permission "intimidates parties into censoring their [First Amendment activities], even if the discretion and power are never actually abused." *Id.* The whole point of the First Amendment's protections is *not* to need or have governmental prior approval. The argument fails.

Defendant McDonald next argues that "Plaintiff does not have the First Amendment right to video record or audio record courtroom proceedings, whether in-person or via remote means." **ECF No. 31, PageID.378.** She then focuses on the text of Michigan Court Rule § 8.115, Michigan Supreme Court Administrative Order No. 1989-1, and the Oakland County District Court's May 2020 *Policy Regarding the Use of Portable Electronic Devices* to attempt to define the right upon which Plaintiff challenges. However, the right-to-record does not rest within these policies or state-level enactments, but under the First Amendment. These non-constitution-based enactments can never define the scope of the Constitution's First Amendment

protections. Here, there is a *constitutional* right to record as a part of the "right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith*, 212 F.3d at 1333. And Defendant McDonald never refutes this principle head-on. Instead, Defendant McDonald broadly points to Justice Harlan's concurrence in *Estes* to vaguely suggest that there is no "right to photograph, record, broadcast, or otherwise transmit the trial proceedings to those members of the public not present." **ECF No. 31, PageID.381**. That misses the mark.

The common approach is to first cite *Estes v. Texas*. The obvious problem largely first ignored—*Estes* was not a First Amendment case but rather sought to answer whether a convicted individual is deprived of *due process* when his trial was televised and broadcasted. As expressly confirmed by *Estes*, "there is no claim here based upon any right guaranteed by the First Amendment." 381 U.S. at 534-535 (lead opinion), *id.* at 604 (Stewart, J., dissenting). The televised state court trial in *Estes* was undoubtedly a circus. *Id.* at 534. However, the Supreme Court specifically reserved a potential future case like this one—"when the advances in these arts [i.e. technology] permit reporting by printing press or by television without their present hazards to a fair trial we will have another case." *Id.* at 540. That case has arrived today.

With broadcasting "advances" in technology like Michigan's Zoom/YouTube platform, viewers from anywhere in the world can observe and then self-make digital recordings while completely *outside* the courtroom. Being outside the courtroom results in zero disruptions to the ongoing proceedings (because the person recording is not physically present in the courtroom like the disrupters in *Estes* were). But because *Estes* was not a First Amendment case but contained the issue's reservation, it does not resolve the First Amendment challenge now presented.

Next, Defendant McDonald points to *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) for the proposition that "there is no constitutional right to have [courtroom] testimony recorded and broadcast." **ECF No. 31, PageID.381.** Plaintiff does not necessarily disagree but this case is not making *that* assertion. It is, however, asserted that once a court undertakes public live-streaming worldwide (i.e. televising court proceedings to outside the physical courtroom and into the world), it cannot preclude the recording of those proceedings by judicial fiat. The First Amendment challenge in the instant case is in regard to the obtainment of photographic/audio-video recordings of broadcasts being streamed far *outside of the courtroom*, i.e. onto the private computers, laptops, tablets, and iPhones of citizens who are physically miles away while observing at

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

newsrooms,[10] homes, work, or elsewhere.

The Court should instead look to *Dorfman v. Meiszner*, 430 F.2d 558 (7th Cir. 1970) to aid in this Court's analysis. In *Dorfman*, a class of reporters challenged Local Rule 34 which prohibited the "taking of photographs in the courtroom or its environs or radio or television broadcasting from the courtroom or its environs, during the progress of or in connection with judicial proceedings." On appeal from outright dismissal, the Seventh Circuit reversed—a "court may, by rule, exclude photographing and broadcasting from those areas of the courthouse *which would lead to disruption or distraction of judicial proceedings*" but a rule that *goes further* is not

---

[10] Moreover, Defendant cannot, with a straight face, explain why Plaintiff Somberg was sought to be punished while the newspapers and media who have done the same thing are regularly not. Recordings of court proceedings are regularly secured and republished by media outlets yet the media outlets are never sought to be held in contempt of court like Plaintiff Somberg. E.g. Oralandar Brand-Williams and Mike Martindale, *Judge Sets February Placement Hearing for Oxford Shooting Suspect Ethan Crumbley*, Detroit News, Jan. 20, 2022, *available at* https://bit.ly/3o6jBQW (video of status conference); George Hunter and James David Dickson, *Crumbley Parents Denied Reduction In $500K Bond*, Detroit News, Jan. 7, 2022, *available at* https://bit.ly/3AOo9Ri (video recording of bond hearing). Photographs are also equally secured. E.g. Ann Kaplan, *Michigan School Shooting Suspect To Pursue Insanity Defense*, Forbes, Jan. 27, 2022, *available at* https://bit.ly/341KZZF (screenshot from hearing). Note: all of the above links involve a case where Defendant is involved. The only obvious difference is that Defendant seemingly dislikes the criticisms Plaintiff Somberg made with his recording as oppose to the positive professional coverage of the prosecutor offered by the media in, for example, the Oxford shooting articles and news-sites. That is viewpoint discrimination. But even if a government official thinks the criticism of himself or herself is ridiculous, "one of the prerogatives of American citizenship is the right to criticize public men and measures—and that means not only informed and responsible criticism but [even] *the freedom to speak foolishly and without moderation*." *Baumgartner v. U.S.*, 322 U.S. 665, 673-674 (1944).

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

"permitted by the First Amendment." *Id.* at 561. While "photographing and broadcasting inside as well as in the areas adjacent to the [actual] courtrooms" can be prohibited as a means of "promot[ing] the integrity of the court's proceedings," a rule that prohibits the same *outside* this immediate physical area "is broader than is necessary to accomplish the stated purpose" of preventing potential disruptions, and is unconstitutional. *Id.* at 562.

Drawing a parallel, Plaintiff Somberg urges that the overbroad prohibition here of banning *any* digital capture of the state courts' worldwide livestream is analogous to Rule 34's overbroad banning the photo/video capture regarding areas far outside of where any disruption or distraction could ever possibly occur. Recording via a home computer or a newsroom laptop literally miles (or perhaps further) from an actual Michigan courtroom is no different than being "nineteen floors away" — both have "no foreseeable noise or commotion occurring" that "would disturb the proceedings in a courtroom." *Id.* Instead, a properly enacted rule "must be confined to those activities which offer immediate threat to the judicial proceedings and not to those which are merely potentially threatening." *Id.* at 653. Rule 34 and the prohibition here are overbroad. And blanket rules, like what happened in *Dorfman* and is happening here with outlawing of digital recording of public

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

livestreams, is "inconsistent with both the letter and the spirit of the First Amendment." *Id.*

## III.   Defendant's use of *McKay* is misplaced

Defendant McDonald alternatively suggests that this Court should looked to another district court's past decision issued in *McKay*.[11] The lower District Court found that its sibling court's *McKay* decision "emphasized [that] Supreme Court precedent… established that there is no First Amendment right to have electronic media *in the courtroom*." But that is not what <u>this</u> case is about. No one here is recording (or seeking to record) *in* the courtroom like what was sought in *McKay*. Rather than challenging what can and cannot occur *inside* the courtroom, this case challenges the right to record, from far *outside* the courtroom, via the public livestreams being voluntarily broadcasted by Michigan courts far outside its four walls.

The issue here is not the right of access to the courtroom with a camera as was raised in *McKay*. Instead, the ban on the creation of information (recordings) is the placement of unconstitutional limits on the capture of publicly-available information from which members of the public may draw.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[11] The outcome in *McKay* was affirmed for lack of standing by plaintiff. *McKay v. Federspiel*, 22 F. Supp. 3d 731 (E.D. Mich. 2014) *affirmed on alt grounds*, 823 F.3d 862 (6th Cir. 2016). However, the trial court decision in *McKay* was effectively overruled. Plaintiff further asserts that the district court decision in *McKay* was wrongly decided. Fortunately, it is not binding on this Court.

21

*Bellotti*, 435 U.S. at 783. In simple terms, assuming the government can totally preclude private recording by individuals in the courtroom, when it freely allows for the worldwide transmission of a livestream of audio and video of proceedings, it cannot punish the filming or recording of the broadcasted depictions of government officials engaged in their duties in a public place. A "trial courtroom" is undisputedly a "public place." *Richmond Newspapers*, 448 U.S. at 578. "Gathering information about government officials[12] in a form that can readily be disseminated to others," like digital photographs or audio-video recordings, "serves a cardinal First Amendment interest." *Glik*, 655 F.3d at 82. "Videotaping is a legitimate means of gathering information for public dissemination." *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 542 (E.D. Pa. 2005); see also *Sharp v. Baltimore City Police*, Case No. 11-2888, ECF No. 24 (D. MD, Jan. 10, 2012), United States' Statement of Interest.[13]

In short, this case is affirmatively distinguishable from *McKay* based on the fact that Plaintiff was and will again be physically far outside the

---

[12] Judges are publicly elected officials. *Jenkins v. KYW*, 1986 U.S. Dist. LEXIS 16999, *6 (E.D. Pa. 1986) ("Public officials, judges included, choose to do the business of the public. Necessarily, they must be willing to bear criticism, disparagement, and even wounding assessments."); the prosecutor is a publicly elected official; the police officers and detectives testifying are public officials; and the proceedings are a public event. *Craig*, 331 U.S. at 374.

[13] A copy is available at https://bit.ly/3o7Q35y.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

courtroom. See *Dorfman*, 420 F.2d at 561-563.[14] Plaintiff Somberg is not challenging for access to the livestreams of the courtrooms or that the courts have an obligation to undertake these livestreams (for First Amendment purposes); he has access to those just like everyone else in the world. What he is challenging is the forthcoming infliction of punishment based on an illegal prohibition regarding his creation of digital records of publicly-made livestreams. The First Amendment right being raised is this case is different than the right claimed in *McKay*. As such, *McKay* is simply unhelpful.[15]

## CONCLUSION

The law is clear—the "First Amendment protects the right to gather information about what public officials do on public property, *and specifically, a right to record matters of public interest.*" *Smith*, 212 F.3d at 1333. And photographic/audio-video recording of publicly broadcasted court

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

---

[14] Defendant McDonald cites to *In re Contempt of Somberg*, unpublished opinion of the Court of Appeals, issued Oct 15, 2020 (Docket No. 344041) as being somehow helpful in this case. In that *Somberg* case, the Michigan Court of Appeals affirmed a finding of contempt for recording within the physical confines of the courtroom—making it distinguishable. Moreover, the Court of Appeals never addressed if such a conviction for recording violates the First Amendment—the constitutional issue raised here.

[15] *Alvarez* recognizes this difference and this Court should do the same. The ACLU sued to enjoin enforcement of an eavesdropping statute against individuals who openly record police officers performing their official duties in public. The Seventh Circuit carefully explained that the ACLU was not making "a claim about the qualified First Amendment right of access to governmental proceedings" because "access is assumed here." Instead, the plaintiff claimed a right to audio record events and communications that take place in a public setting. *Alvarez*, 679 F.3d at 598. Same thing here, given that a "trial courtroom" is undisputedly a "public place." *Richmond Newspapers*, 448 U.S. at 578.

proceedings is protected by the First Amendment. *Glik*, 655 F.3d at 82-83. It is "unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property…" *Price*, 45 F.4th at 1071. Being an elected judge rather than a hired cop is of no meaningful difference as to recording a public official undertaking official duties in a public setting. "[A] state's judiciary is not immune from the Constitution's prohibitions. *Stop the Beach Ren. v. Fla. Dept. of Env. Prot.*, 130 S. Ct. 2592, 2061 (2010). "Courts, too, are bound by the First Amendment." *Citizens United v. F.E.C.*, 558 U.S. 310, 326 (2010). Because recording and making easily-shared digital records can be accomplished without any court interference, the First Amendment protects the same from being legally stymied. This Court should deny Defendant McDonald's motion for summary judgment.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Nicholas Somberg requests that this Court deny Defendant Karen McDonald's motion for summary disposition pursuant to Rule 56 and instead reconsider its prior decision in declining to award summary judgment in favor of Plaintiff.

Date: November 1, 2022                    RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

25

**CERTIFICATE OF SERVICE**

I hereby certify that on date stated below, I filed the foregoing document with the ECF/CM system which will serve an email copy of the same to all counsel of record (at their email address of record) on the date stated below.

Date: November 1, 2022     RESPECTFULLY SUBMITTED:

/s/ Philip L. Ellison
**OUTSIDE LEGAL COUNSEL PLC**
**PHILIP L. ELLISON (P74117)**
Counsel for Plaintiff
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com