UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS SOMBERG

    Plaintiff,

       v.

JESSICA R. COOPER, IN HER
OFFICIAL CAPACITY AS
PROSECUTOR OF OAKLAND
COUNTY, MICHIGAN

    Defendant.

_____/

Case No. 20-CV-11917

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 31]

### I.    Introduction

On July 15, 2020, Plaintiff Nicholas Somberg ("Plaintiff" of "Somberg") filed a lawsuit against Defendant Jessica R. Cooper ("Defendant") in her official capacity as Prosecutor of Oakland County, Michigan. ECF No. 1. Plaintiff brings a challenge pursuant to the First Amendment to the United States Constitution and 42 U.S.C. § 1983. The complaint alleges that Plaintiff has a First Amendment right to record and photograph publicly "live-streamed" court proceedings regarding matters of public concern. *Id*. at PageID.1–2.

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 31. Plaintiff filed a response brief and Defendant did not reply. The Motion is fully

1

briefed. Upon review of the parties' briefing, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the Motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons set forth below, Defendant's Motion for summary judgment is **GRANTED**.

## II.     Factual Background

This lawsuit arises out of a May 2020 pretrial conference in a criminal case at the 52nd District Court, where Plaintiff, an attorney, appeared on behalf of his client via Zoom. ECF No. 31, PageID.375. During this proceeding, which was also being live streamed on YouTube, Plaintiff took a "screenshot" to later share on the social networking platform known as "Facebook." *Id*. The screenshot depicts a still-shot of the on-screen public judicial proceedings. *Id*. When Plaintiff posted the photograph to his Facebook, he added "disparaging remarks" about the assistant prosecutor on the case. *Id*. The Oakland County Prosecutor's Office learned of Plaintiff's Facebook post the following day. *Id*.

According to Defendant, the Oakland County Prosecutor's Office was concerned that Plaintiff's actions should be brought to the presiding judge's attention since it potentially violated the Michigan Court Rules, the court's local policy, and/or the Rules of Professional Responsibility. ECF No. 31, PageID.376. On May 28, 2020, Assistant Prosecutor Qamar Enayah filed a motion to show cause to hold

Plaintiff in contempt for "being in violation of the law by taking photographs of the proceedings and posting the photographs to Facebook." *Id*. at PageID.375. The Oakland County District Court noticed the motion to show cause for a hearing for June 2, 2020. *Id*. The court also set a contempt hearing for June 24, 2020. *Id*. Plaintiff subsequently sought pre-hearing dismissal through a series of motions to dismiss based upon "procedural and jurisdictional defects." ECF No. 32, PageID.422.

At the show cause hearing on June 2, 2020, the Oakland County Prosecutor's Office cited paragraphs three and four of the court's May 1, 2020 "Policy Regarding the Use of Portable Electronic Devices," it reads in relevant part:

> (3) No one may use a portable electronic device(s) to take photographs or for audio or video recording, broadcasting, or live streaming unless that use is specifically allowed by the judge presiding over that courtroom through a written Order.

> (4) In areas of the courthouse outside the courtroom, no one may photograph, record, broadcast, or live stream an individual without their express prior consent.

ECF No. 32, PageID.421.[1] On July 10, 2020, the court issued an opinion and order which granted Plaintiff's motions to dismiss based on procedural irregularities. *See* ECF No. 1-9. At the hearing, Defendant also argued that Administrative Order ("AO") No. 1989-1 was at issue. ECF No. 32, PageID.430. AO No. 1989-1 permits

---

[1] Plaintiff notes in his response brief that the court has a "stamp" placed in the bottom right-hand side of the YouTube live-stream. ECF No. 32, PageID.421. The "stamp" reads: "Do Not Record." *Id*.

an individual to receive permission from a presiding judge to record or broadcast court proceedings. ECF No. 31-5, PageID.409. According to Section 2(a)(i), "electronic media coverage shall be allowed upon request in all court proceedings." *Id*. The court therefore did not consider the merits of Plaintiff's conduct at the Zoom proceeding. ECF No. 31, PageID.375. The court noted, however, that it was "chagrined and troubled by the allegations." ECF No. 32, PageID.422. Defendant notes that the Oakland County Prosecutor's Office did not appeal the court's dismissal of the criminal contempt charge. ECF No. 31, PageID.375. Defendant further asserts that "no one from the Prosecutor's Office has sought to reinstitute the contempt proceedings against Plaintiff at any time." *Id*. Plaintiff emphasizes that Defendant's contempt request can be refiled at any time. ECF No. 32, PageID.422.

Plaintiff then filed the lawsuit presently before this Court on July 15, 2020. ECF No. 1. In his Complaint, he alleges a First Amendment violation of his "protected right to photograph, screenshot, audio/video record, broadcast, report, distribute, share, and publish photographic, audio, and video recordings of public live-streamed Michigan court proceedings without threat of or an actual prosecution by Defendant[.]" *Id*. at PageID.17–18. Plaintiff asserts that "he does not wish to be subject to contempt, fined not more than $7,500.00, and/or jail for 93 days for exercising his constitutional First Amendment rights." *Id*. at PageID.17. Moreover,

he claims that he "seeks to and will again exercise a right to" make digital records of publicly "live streamed" matters of public concern by the state judiciary. *Id*.

Plaintiff filed a Motion for Summary Judgment on December 10, 2020. In response, the Defendant asked the court to deny the motion and dismiss the case. The court denied Plaintiff's motion, concluding that the First Amendment does not protect the right to record publicly livestreamed court proceedings. But the court declined to dismiss the case because Defendant had not filed a cross-motion for summary judgment. Plaintiff asked the district court to certify its summary judgment denial for interlocutory appeal under 28 U.S.C. § 1292(b). The Sixth Circuit weighed in, denying the petition for leave to appeal, and reasoning that "interlocutory appeal would not materially advance the litigation." *In re Somberg*, 31 F.4th 1006, 1007 (6th Cir. 2022). Defendant subsequently filed a Motion to Reopen Case and Allow Defendant to File a Motion to Dismiss. Plaintiff responded and the Court granted the motion in part and denied it in part, noting that it would be procedurally improper for Defendant to file a motion to dismiss at this juncture. ECF No. 29, PageID.358. However, the Court reopened the case for the purpose of Defendant filing a motion for summary judgment. *Id*. Defendant filed her Motion for Summary Judgment on November 1, 2022.  The Court will discuss the law and analysis applicable to that Motion below.

### III.   Legal Standards

#### A. Summary Judgment and 42 U.S.C. § 1983

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The provisions of 42 U.S.C. § 1983 serve as the legal vehicle for a plaintiff to federal claims for relief. § 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). A claimant must show "1) the deprivation of a right secured by the Constitution… and 2) the deprivation was caused by a person acting

under color of state law." *Simescu v. Emmet Cnty. Dep't. of Social Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

### B. The First Amendment

The First Amendment provides in relevant part: "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. I. The applicable framework for analyzing Somberg's alleged right to record live streamed court proceedings must be determined. There are a variety to choose from and the appropriate analysis depends on the specific First Amendment right at issue. There are two relevant analytical frameworks: the right to free expression—which applies the public forum analysis—and the right to access. Although right to access cases "are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases." *S.H.A.R.K.*, 499 F.3d at 559.

### 1. The Right to Access

It is well-settled that the First Amendment guarantees the right of public access to criminal trials, including the right to listen, take notes, to disseminate, and publish what an individual observes at the proceeding. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575–80 (1980).  Underlying the right of access is "the common understanding that a major purpose of the [First] Amendment was to protect the free discussion of governmental affairs" and "to ensure that this constitutionally protected 'discussion of government affairs' is an informed one."

7

*Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 604-05 (1982). Public scrutiny also "fosters an appearance of fairness" and "permits the public to participate in and serve as a check upon the judicial process." *Id*. at 606.

Under the right to access jurisprudence, courts have concluded that "the First Amendment does not require unfettered access to government information." *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 182 (3rd Cir. 1999); *see also S.H.A.R.K.*, 499 F.3d at 560 ("[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.") (quoting *Houchins v. KQED, Inc*., 438 U.S. 1, 15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978)). Courts have held that "[t]he First Amendment does not require states to accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record." *Maple Heights News v. Lansky*, 2017 WL 951426, at *3 (N.D. Ohio Mar. 10, 2017) (quoting *Whiteland*, 193 F.3d at 183).

When an individual's right of access has been limited in some way—such as by placing limits on the recording of judicial proceedings—the Sixth Circuit has established the following framework to determine "whether a plaintiff has a lawful right of access to the information and whether the government's rule limiting access is unconstitutional." *Hils v. Davis*, 2022 WL 769509, at *6 (S.D. Ohio Mar. 14,

8

2022) (emphasis added), aff'd, 52 F.4th 997 (6th Cir. 2022) (citing *S.H.A.R.K.*, 499

F.3d at 560-61) (internal quotation marks omitted).

> *First*, we ask what rule the government is invoking that prohibits the plaintiffs from access to information, and whether that rule 'selectively [ ] delimit[s] the audience.' ... *Second*, we inquire into the government's stated interest for invoking the rule. *Third*, we apply the applicable test to determine whether the government's stated interest is sufficiently related to the means of accomplishing that interest: if the rule does not selectively delimit the audience, we uphold the restriction if it is reasonably related to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny will apply.

*Id*.

## 2. The Right to Freedom of Expression

On the other hand, to assess whether the government has violated an

individual's free speech rights, the Sixth Circuit employs a three-step analysis: "(1)

we ask whether the speech is protected under the First Amendment; (2) if so, using

the public-forum doctrine, we ascertain whether the applicable forum is public or

nonpublic; and (3) applying the appropriate standard for the forum, we ask whether

the government's prohibition on speech passes muster under the First Amendment."

S.*H.A.R.K. v. Metro Parks Service Summit County*, 499 F.3d 553 at 559 (6th Cir.

2007) (citing *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005)).

## IV.    Discussion

The parties agree that no genuine questions of material fact exist; according to Plaintiff, "the question is one of constitutional law." ECF No. 32, PageID.415. Specifically, Plaintiff asserts that "this case brings a challenge not regarding access to or activities in the courtroom," but rather "the right to record and photograph publicly livestreamed matters of public concern—i.e., the conduct of legal proceedings at Michigan public courthouses being broadcasted worldwide via live video-audio streaming services to outside the courtroom." *Id*. The argument continues, averring that strict scrutiny applies and that—because the virtual proceedings were live streamed and broadcasted indiscriminately to the public—the prohibition on recording proceedings without the court's permission is not narrowly tailored to serve the purported compelling government interests in assuring decorum and proper order of court proceedings. ECF No. 32, PageID.429. Plaintiff asks this Court to "affirm the First Amendment's assurance that a free and open society includes the ability to make audio-video recordings and photographs of publicly broadcasted legal proceedings at Michigan public courthouses via live video audio streaming services." *Id*. at PageID.424.

On the other hand, Defendant's Motion argues the following.

Plaintiff's [First Amendment right to access] does not [include the] right to video record or audio record courtroom proceedings, whether in-person or via remote means. Plaintiff has not and cannot show that any of the Orders, Rules, or Policies regarding virtual court proceedings

violate his First Amendment rights as they are legitimate restrictions in a historically non-public forum. Each Order, Rule and Policy cited, including the District Court's Policy Regarding the Use of Portable Electronic Devices, supports the proposition that virtual court participants and observers are still in the courtroom. This Court should not unilaterally carve out an exception to allow the Plaintiff to post to his social media.

ECF No. 31, PageID.378. Defendant also avers that, "[t]o the extent that Plaintiff asserts that his right to record is one of freedom of expression rather than, or in addition to, access, the Court should still determine that such a claim is without merit." ECF No. 31, PageID.386. Specifically, Defendant argues that, since the court is a non-public forum, and the Michigan court rule is content-neutral, a rational basis analysis applies and the prohibition against recording live proceedings through portable electronic devices is a reasonable method for protecting government interests in assuring proper order and decorum in the courtroom. ECF No. 31, PageID.388.

Plaintiff's alleged claim asserting that the prohibition on recording court proceedings is unconstitutional lies in the right to access jurisprudence, as opposed to the right to expression. *See Hils v. Davis*, 2022 WL 769509, at *5–6 (S.D. Ohio Mar. 14, 2022), aff'd, 52 F.4th 997 (6th Cir. 2022) (citing *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 559 (6th Cir. 2007)); see also *Knight v. Montgomery Cty.*, No. 3:19-CV-00710, 2019 WL 13109761, at *2 (M.D. Tenn. Aug. 16, 2019) ("the Court is not convinced that a public forum analysis applies here,

because that analysis focuses on the government's interference with a plaintiff's 'speech or other expressive activity' and the act of merely recording a governmental meeting is not expressive activity."). Accordingly, the Court will conduct its "right to access" analysis below.

## A. The Right to Access Analysis

The Court's adopts by reference its previous holdings regarding Plaintiff's purported right to access, as stated in its Amended Opinion and Order Denying Plaintiff's Motion for Summary Judgment and Granting Plaintiff's Motion for Certification For Interlocutory Appeal [ECF No. 24]. Those rulings are applicable to the present Motion and are stated below, along with its associated rationale.

> The Supreme Court first analyzed the constitutional implications of electronic media in the courtroom in *Estes v. Texas*, 381 U.S. 532 (1965). There, the Supreme Court held that a criminal defendant was deprived of his right to due process by the broadcasting of his trial. Justice Clark's plurality opinion disposed of the question of whether First Amendment interests were implicated, noting that neither the First nor Sixth Amendment "speaks of an unlimited right of access to the courtroom on the part of the broadcast media." *Id*. at 539–40 (citation omitted). He further opined that "[w]hen the advances in the[] arts permit reporting by printing press or by television without their present hazards to a fair trial we will have another case." *Id*. at 540.

> The Supreme Court later revisited *Estes* in its *Chandler v. Florida*, 449 U.S. 560 (1981) decision. In *Chandler*, the Supreme Court upheld the constitutionality of Florida's Judicial Canon, which authorized judges to permit audio-visual coverage of court proceedings, even over a defendant's objection in a criminal proceeding. The *Chandler* court determined that the law at issue was not per se unconstitutional, reasoning that its decision in *Estes* did not impose a per se constitutional ban on televising court proceedings. 449 U.S. at 573–74 (citation

omitted). Importantly, the *Chandler* court noted that the media does not have a constitutional right to have electronic equipment in the courtroom:

> While we have concluded that the due process clause does not prohibit electronic media coverage of judicial proceedings per se, by the same token we reject the argument of the [media] that the first and sixth amendments to the United States Constitution mandate entry of electronic media into judicial proceedings.

*Id*. at 569. Accordingly, as another court within this District explained, *Chandler* holds "only that televising criminal trials is constitutionally permissible. It does not hold that it is constitutionally required." *McKay v. Federspiel*, No. 14- cv-10252, 2014 WL 1400091, at *5 (E.D. Mich. Apr. 10, 2014) (Ludington, J.).

The right to access, like many aspects of the First Amendment, is not absolute. *Id*. . . . In his present Motion, Plaintiff cites to several cases from neighboring circuits for the proposition that the First Amendment protects an individual's right to record matters of public interest: *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011*); Fields v. City of Phila*., 862 F.3d 353, 358 (3rd Cir. 2017); *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 586–87 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017). Importantly, these decisions involved different kinds of public spaces. The kinds of public spaces at issue in the aforementioned circuit court decisions are not necessarily applicable to judicial proceedings. Indeed, as Defendant correctly highlights in her Response, ECF No. 13, PageID.190, courtrooms are "nonpublic" fora, where First Amendment rights "are at their constitutional nadir," *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citation omitted). They are different from street corners and city parks. As the Sixth Circuit explained, "the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech." *Id*. (citations omitted). Courtrooms' participants, including observing members of the public, are subject to unique constraints that do not apply in other public spaces.

At the hearing, Plaintiff suggested that the First Circuit's decision in *Glick v. Cunniffee* is particularly illustrative for the present matter. However, this decision did not involve an individual's access to a courtroom proceeding. Rather, the plaintiff filmed the defendant police officers in the Boston Common. The *Glick* court emphasized that this public space was 'the oldest city park in the United States and the apotheosis of a public forum.' In such traditional public spaces, the rights of the state to limit the exercise of First Amendment activity are 'sharply circumscribed.' 655 F.3d at 84 (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37 (1983)). Notably, the *Glick* court specifically analyzed the narrow question of whether there was a constitutionally protected right to videotape police carrying out their duties in public. 655 F.3d at 82. In finding that the First Amendment protects this specific activity, it explained:

> 'In our society, police officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights. See *City of Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ('[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.'). Indeed, '[t]he freedom of individuals to verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.' *Id*. at 462–63, 107 S.Ct. 2502. The same restraint demanded of law enforcement officers in the face of 'provocative and challenging' speech, *id*. at 461, 107 S.Ct. 2502 (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)), must be expected when they are merely the subject of videotaping that memorializes, without impairing, their work in public spaces.'

*Id*. at 84. Similarly, the Third Circuit's decision in *Fields v. City of Phila*. did not involve access to a court proceeding. There, plaintiffs brought an action against the City of Philadelphia and certain police officers for retaliation for photographing and recording police activity in arresting protestors in public places: the City's Convention Center and a public sidewalk. 862 F.3d at 355. The *Fields* court held that the plaintiffs had a First Amendment right to record police officers

14

conducting official police activity in public areas. *Id*. at 359–60. In making this finding, the *Fields* court emphasized the importance of the right to access 'information regarding public police activity,' as such information 'leads to citizen discourse on public issues[.]' *Id*. at 359 (citations omitted) (emphasis added).

To look at one other cited circuit decision, the Seventh Circuit implied in *Am. C.L. Union of Ill. v. Alvarez* that there was a First Amendment right to make audiovisual recordings of police officers performing their duties in public spaces. There, the ACLU argued that an Illinois wiretapping statute, which criminalized the audio recording of police officers, was unconstitutional as applied to its planned 'police accountability program.' Relying in part on the First Circuit's decision in *Glick*, the *Alvarez* court determined that there was a First Amendment right to gather information about government officials performing their duties in public, 679 F.3d at 600–01, and that the wiretapping statute was likely to fail intermediate scrutiny, *id*. at 604–08.

Even if this Court were to assume that the aforementioned decisions affirmatively stand for the proposition that there is a First Amendment right to record matters of public interest extending to courtroom proceedings, these decisions do not indicate that this right is clearly established law in the Sixth Circuit. These out-of-circuit decisions—which specifically analyzed § 1983 claims arising from the recording of law enforcement conduct in public spaces not involving courtrooms— do not convince this Court at this time that Plaintiff is entitled under the First Amendment to obtain photo-audio-video records of courtroom proceedings that are live-streamed.

The Court instead is persuaded by another court within this District that determined there is no First Amendment right to record courtroom events. See *McKay v. Federspeil*, 22 F. Supp. 3d 731, 736 (E.D. Mich. 2014). While the Court agrees with Plaintiff that the *McKay* decision is not binding on this Court, it finds that the court's reasoning is persuasive for the present matter. In *McKay*, the plaintiff argued that an electronic device order in the Saginaw County Courts violated the First, Fourteenth, and Fifth Amendments to the United States Constitution. Similar to the present matter, the plaintiff did not allege that he requested or had been denied judicial permission to use a prohibited electronic device, nor did he allege any attempts to enter the

15

courthouse with such prohibited devices. Plaintiff instead maintained, as he does here, that he did not wish to be subject to contempt for exercising his asserted constitutional rights to film and record judicial proceedings.

The *McKay* court ultimately concluded that the First Amendment right of access should not be extended to include the ability to record courtroom events using electronic media. 22 F. Supp. 3d at 736. The court emphasized Supreme Court precedent which has established that there is no First Amendment right to have electronic media in the courtroom. Moreover, the court rejected the plaintiff's claim that because a courtroom is a public place, 'it is incongruous that a place recognized by the Supreme Court as being a 'public place' with 'government officials engaged in their duties' could be deemed a First Amendment free-zone as to recording—a type of protected activity.' *Id*. at 735.

Here, Plaintiff presents a nearly identical argument. This Court disagrees with Plaintiff that his case is affirmatively distinguishable based on the fact that he was physically "far outside the courtroom." ECF No. 14, PageID.259 (emphasis omitted). The Oakland County District Court conducted the virtual pretrial hearing as if it were being conducted within the four walls of the courtroom. This Court declines to find a distinction between an in-person and a virtual proceeding for purposes of establishing the asserted right to record. In both scenarios, the interested parties must 'conduct themselves with decorum, and observe the trial process.' *Estes*, 381 U.S. at 588 (Harlan, J., concurring). In both scenarios, any individual has the ability to request a transcript of a proceeding should they desire to do so. And in both scenarios, any individual may attend, observe, and subsequently comment on the activities of public officials within the courtroom, either by physically arriving at the courtroom or accessing a court-provided online link.

Accordingly, there is no prohibition against Plaintiff's ability to disseminate a desired message and otherwise communicate to his desired platforms that occurred during a court proceeding, either in-person or virtual. This Court also emphasizes that Plaintiff can obtain transcripts to these proceedings at any time. These circumstances demonstrate the courtroom is not closed off to the public and does not

interfere with the First Amendment's assurance of a free and open society. Indeed, these activities fulfill the two constitutional pillars asserted by Plaintiff—(1) 'gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of government affairs,' *Glick*, 655 F.3d at 82–83, and (2) 'extensive public security and criticism' of the judicial system's officials serves to 'guard[] against the miscarriage of justice,' *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560 (1976). ECF No. 14, PageID.262.

In sum, the Court concludes that the Oakland County District Court courtrooms remain open to the public via live-stream broadcasts. Nothing in the challenged policy prevents Plaintiff or any other member of the bar or public from attending the virtual proceedings. Accordingly, as the *McKay* court found, the First Amendment right at issue in *Richmond Newspapers* is not implicated in the present case. *McKay*, 22 F. Supp. 3d at 735–36. The Court declines to adopt Plaintiff's assertion that there is a First Amendment right to 'photograph, screenshot, audio/video record, broadcast, report, distribute, share, and public photographic, audio, and audio-video records of public Michigan court proceedings being livestreamed worldwide[.]' ECF No. 7, PageID.101. The Court will thus deny Plaintiff's present Motion.

ECF No. 24, PageID.325-333.[2]

---

[2] The Court notes that Plaintiff filed a "Notice of New Authority". In that Notice, he cites *Sharpe v. Winterville Police Dep't*, 59 F.4th 674 (4th Cir. 2023). He says that, in that case, "the Fourth Circuit held that a governmental policy banning the recording of governmental activity by livestreaming violated the First Amendment. Recording governmental activity by livestream creates information that contributes to discussion about governmental affairs that can be later disseminated." ECF No. 34, PageID.484. But *Sharpe* involved a town policy that prohibited livestreaming interactions with law enforcement and a passenger's livestreaming of a police officers' traffic stop of his vehicle. *Sharpe*, 59 F.4th 674. Similar to the other cases involving recordings of police discussed above, *Sharpe* is not persuasive because its analysis does not discuss a First Amendment right to record judicial proceedings. Finally, *Sharpe* was decided on February 7, 2023, long after Plaintiff's claim arose, and a petition for certiorari for has been docketed for *Sharpe* by the U.S. Supreme Court. *Id*. at 59. Thus, *Sharpe* does not purport to clearly establish the law in the Sixth Circuit.

The Court returns to Plaintiff's attempts to distinguish *McKay*, arguing in substance that the "*McKay* decision['s] 'emphasi[s] [on] Supreme Court precedent [which]… established that there is no First Amendment right to have electronic media in the courtroom'" is misplaced as applied to the present Motion. ECF No. 31, PageID.437. Plaintiff contends that "[n]o one here is recording (or seeking to record) in the courtroom like what was sought in *McKay*." *Id*. Rather, Plaintiff purports to challenge the right to record, "from far outside the courtroom, via the public livestreams being voluntarily broadcasted by Michigan courts far outside its four walls." *Id*.

Plaintiff's acknowledges that *McKay* held that an individual does not have a right to record within the physical space of the court room. He nonetheless purports to have a right to record live streamed proceedings occurring on Zoom. As stated above, such a right does not exist regardless of whether the court proceedings occur in person or virtually. Even if it did, however, this distinction does not change the Court's conclusion. Michigan Court Rule 8.115 governs Courtroom Decorum. Rule 8.115 (C)(3)(a)-(b) provides that:

> (a) In a courtroom: In a courtroom, no one may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live streaming unless that use is specifically allowed by the Judge presiding over that courtroom.

---

(b) Outside a courtroom: In areas of a courthouse other than courtrooms, no one may photograph, record, broadcast, or live stream an individual without that individual's prior express consent.

Rule 8.115(C)(2)(b)-(c) and defines a "courthouse" to include, "all areas within the exterior walls of a court building, or if the court does not occupy the entire building, that portion of the building used for the administration and operation of the court. A "courthouse" also includes areas outside a court building where a judge conducts an event concerning a court case." *Id*. The Rule further defines a "courtroom" to include "the portion of a courthouse in which the actual proceedings take place." *Id*. The court rule is intended to assure decorum and proper order of proceedings. Somberg appeared on behalf of his client via Zoom, the proceedings were live streamed on YouTube and Plaintiff took a screenshot that he later shared on Facebook.

Applying the test articulated in *S.H.A.R.K*, the prohibition applies equally to all, regardless of the audience it reaches. Thus, it does not selectively delimit the audience and the court rule only need be reasonably related to legitimate government interests to survive constitutional muster. The prohibition is reasonably related to the stated government interests because an attorney who appears for a court proceeding via Zoom is still required to conduct themselves with decorum and proper order. It is true that members of the public who watch the proceedings on YouTube do not participate in them and may be unable have a real time impact on or disrupt the proceedings. Unlike members of the public watching on YouTube, however, an

19

attorney who participates in the proceeding and records it—whether it occurs virtually or in person—could interfere with the court's interests in assuring decorum and proper order. For this reason, the "courtroom"—and the rules that apply in that setting—extend to places outside of the physical courtroom where proceedings are properly being conducted and where individuals could disrupt those proceedings by making noise, recording, etc. An attorney attending a court proceeding via Zoom could disrupt those proceedings by recording them and the fact that members of the public watching on YouTube may not have the same ability to disrupt proceedings in real time does not render the court rule unreasonable in relation to the stated government interests in proper order and decorum of court proceedings.

Thus, the restriction on recording, as it was applied to Somberg, is reasonably related to the government's legitimate government interests in proper order and decorum. There are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. On this ground, the Court will grant Defendant's Motion for summary judgment. Even if the Court viewed Somberg's claim as one asserting the First Amendment right to free expression, however, his claim would still fail because he does not have a right to record court proceedings occurring on Zoom, as stated above.

## V.      Conclusion

For the reasons set forth above, and as explained in the Court's Amended Opinion and Order Denying Plaintiff's Motion for Summary Judgment and Certifying Interlocutory Appeal, Defendant's Motion for summary judgment is **GRANTED**.


**SO ORDERED.**

Dated:  September 22, 2023                              /s/Gershwin A. Drain
                                                        GERSHWIN A. DRAIN
                                                        United States District Judge



CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
September 22, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk