**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: August 28, 2024

Mr. Philip Lee Ellison
Outside Legal Counsel
P.O. Box 107
Hemlock, MI 48626

Mr. Andrew Casey Geronimo
Case Western Reserve University School of Law
Milton A. Kramer Law Clinic Center
11075 East Boulevard
Room 222
Cleveland, OH 44106

Ms. Brooke Elizabeth Tucker
Oakland County Corporation Counsel
1200 N. Telegraph Road
Department 419
Pontiac, MI 48341

Re: Case No. 23-1872, *Nicholas Somberg v. Karen McDonald*
Originating Case No. : 2:20-cv-11917

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

Case: 23-1872 Document: 34-1 Filed: 08/28/2024 Page: 2

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

Case: 23-1872 Document: 34-2 Filed: 08/28/2024 Page: 1

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0202p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

NICHOLAS PAUL SOMBERG,
*Plaintiff-Appellant*,

*v.*

KAREN D. MCDONALD, in her official capacity as Prosecutor of Oakland County, Michigan,
*Defendant-Appellee*.

No. 23-1872

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-11917—Gershwin A. Drain, District Judge.

Decided and Filed: August 28, 2024

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

## COUNSEL

**ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellant. Brooke E. Tucker, OAKLAND COUNTY CORPORATION COUNSEL, Pontiac, Michigan, for Appellee. Andrew Geronimo, CASE WESTERN RESERVE UNIVERSITY, Cleveland, Ohio, for Amicus Curiae.

THAPAR, J., delivered the opinion of the court in which BATCHELDER, J., joined. MATHIS, J. (pp. 9–19), delivered a separate dissenting opinion.

## OPINION

THAPAR, Circuit Judge. A Michigan court rule forbids recording, photographing, or livestreaming judicial proceedings. Nicholas Somberg claims that rule violates the First

Amendment. Because Somberg lacks Article III standing to pursue his claim, we remand with instructions to dismiss.

I.

Nicholas Somberg is an attorney in Michigan. In mid-2020, he was representing a criminal defendant in the 52d Judicial District—the regional court covering Oakland County. That court limits participants' and spectators' ability to use electronic devices during proceedings. Specifically, "[n]o one . . . in a courtroom . . . may use a portable electronic device to take photographs or for audio or video recording, broadcasting, or live streaming." R. 32-5, Pg. ID 451. A person may, however, seek permission to do so from the courtroom's presiding judge. Those who violate the Electronics Rule face contempt—the only punishment the Rule allows.

As trial neared, Somberg and an assistant prosecutor met the judge in a virtual courtroom for a conference. During the conference, and without the judge's permission, Somberg used his cell phone to take a picture of the Zoom meeting on his computer. He later posted the picture on his Facebook account to his followers' delight.

The Oakland County Prosecutor had a different reaction. Believing that Somberg's conduct violated Michigan court rules, she filed a motion asking the court to hold him in contempt. Somberg moved to dismiss the motion based on various procedural infirmities. The court granted Somberg's motion without addressing the Electronics Rule's merits. The prosecutor's office never renewed its request.

Somberg says he wants to continue recording online judicial proceedings in the 52d District. And he's afraid that the prosecutor's office will again ask the court to hold him in contempt. So he sued the prosecutor in her official capacity, seeking a declaration that the Electronics Rule violates the First Amendment and an injunction barring her office from enforcing the Rule against him. *See* 42 U.S.C. § 1983; *Ex parte Young*, 209 U.S. 123, 159–60 (1908). After dueling summary-judgment motions, the court granted the prosecutor's and denied Somberg's, concluding that the Electronics Rule satisfied First Amendment scrutiny. Somberg now appeals.

II.

Our inquiry begins and ends with standing. Standing is a "bedrock constitutional requirement" that applies "to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023). As the Supreme Court recently emphasized, federal courts do not operate as an "open forum for citizens 'to press general complaints about the way in which government goes about its business.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1554 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). Standing doctrine thus requires an individual to have a personal stake in a case's outcome. *Id.* at 1554–55. It also sometimes means that the federal courts "decide some contested legal questions later rather than sooner," to respect political processes. *Id.* at 1555.

To establish Article III standing, Somberg must show that (1) he faces a concrete injury, (2) a causal relationship exists between that injury and the challenged conduct, and (3) the relief he seeks would redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because this case comes to us after a grant of summary judgment, Somberg must make that showing with "specific facts" and can't rest on "mere allegations." *Id.* at 561.

Somberg brings a pre-enforcement challenge to the Electronics Rule. Ordinarily, a litigant challenging a state law's constitutionality must wait for the state to enforce that law against him. Otherwise, he'd have no concrete injury to satisfy Article III's standing requirement. *See Allen*, 468 U.S. at 754–55. Then, during enforcement proceedings, he may raise the Constitution as a defense. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 49–50 (2021). But in certain cases "arguably affected with a constitutional interest," he need not wait on enforcement to challenge the state's law. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). He may instead seek to restrain the government on the front end if he faces an "imminent" and "credible threat" of injury. *Id.* (citations omitted).

A.

Somberg claims he faces an imminent and credible threat of injury in two ways. First, Somberg fears contempt itself, which could expose him to a hefty fine and up to 93 days in jail. *See* Mich. Comp. Laws § 600.1715. His appellate briefing reiterates this concern, noting that

Case: 23-1872 Document: 36-2 Filed: 08/28/2024 Page: 4



without relief from this court, the prosecutor "will simply renew her demand for imposition of contempt." Appellant Supp. Br. 4. Second, Somberg suggests that being subject to contempt *proceedings*—even if he's never actually held in contempt—is itself a constitutional injury.

No matter how he slices it, neither theory satisfies Article III because Somberg can't demonstrate causation and redressability. *See All. for Hippocratic Med.*, 144 S. Ct. at 1555 (2024) (explaining that "causation and redressability" are often "flip sides of the same coin" (citation omitted)). Somberg wants an injunction barring the prosecutor from seeking a contempt sanction if he records another proceeding. But regardless of what the prosecutor might do, courts have the authority to hold Somberg in contempt *sua sponte* by issuing a show cause order.[1] *See* Mich. Comp. Laws §§ 600.1701, 600.1711; *Shindorf v. Shindorf*, No. 355083, 2021 WL 5755137, at *7 (Mich. Ct. App. Dec. 2, 2021) ("[T]he trial court sua sponte issued a show-cause order . . . ."). So even if we enjoined the prosecutor from initiating contempt proceedings, nothing about that injunction would stop the court from holding Somberg in contempt after a hearing. Mich. Comp. Laws § 600.1711.

In addition, a third party—not just the prosecutor—can refer Somberg for contempt proceedings. *See, e.g.*, *DeGeorge v. Warheit*, 741 N.W.2d 384, 387 (Mich. Ct. App. 2007) (per curiam) (party to a contract in a suit for breach); *In re Contempt of Henry*, 765 N.W.2d 44, 49 (Mich. Ct. App. 2009) (per curiam) (court-appointed receiver directed to disburse child-support funds); *Gregory v. Gregory*, No. 363988, 2024 WL 302048, at *3 (Mich. Ct. App. Jan. 25, 2024) (per curiam) (ex-spouse in divorce proceeding). For example, in *DeGeorge*, the court explained that "it is manifest that the Michigan Court Rules contemplate that a private party (and by

[1]Michigan's law on criminal contempt is clear. When a party commits contempt in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both. Mich. Comp. Laws § 600.1711(1). For contempt committed "other than in the immediate view and presence of the court," the court may "punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." Mich. Comp. Laws § 600.1711(2). But even under this second provision, a court can *sua sponte* issue a show-cause order requiring a party to show why they should not be held in criminal contempt. *See Shindorf v. Shindorf*, No. 355083, 2021 WL 5755137, at *7 (Mich. Ct. App. Dec. 2, 2021). So long as certain procedures are observed, the court can still *sua sponte* issue a finding of contempt. *See id.*; *In re Contempt of Auto Club Ins. Ass'n*, 243 Mich. App. 697, 713–14 (2000). And, in any event, a court can appoint a special prosecutor to prosecute a contempt charge. *In re Contempt of Mitan*, No. 222230, 2002 WL 31082190, at *9 (Mich. Ct. App. Sept. 17, 2002) ("We…hold that courts in Michigan also possess such inherent authority and the concomitant power to appoint private counsel to prosecute criminal contempt actions.").

obvious extension that party's attorney acting in a representative capacity) may initiate and prosecute a motion to hold an opposing party in criminal contempt." 741 N.W.2d at 391. At bottom, the relevant actor here—the one capable of inflicting the injury Somberg fears—is the court, not the prosecutor. In other words, the prosecutor isn't the cause of Somberg's asserted future injury, and an injunction against the prosecutor wouldn't redress that injury.

To be sure, Somberg would have a tough time enjoining the state court or its judges. *See Young*, 209 U.S. at 163 ("[A]n injunction against a state court would be a violation of the whole scheme of our government."); *Jackson*, 595 U.S. at 39 (holding *Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks"). But the practical difficulties of pre-enforcement review aren't an excuse to distort the boundaries of Article III. *See TransUnion, LLC v. Ramirez*, 594 U.S. 413, 429–30 (2021) (quoting *INS v. Chadha*, 462 U.S. 919, 944 (1983)). And Somberg remains free to raise his First Amendment arguments as defenses in contempt proceedings—if they ever happen—and on direct appellate review.

B.

Somberg argues that our precedent dictates a different result and points to two cases: *Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019), and *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019 (6th Cir. 2024). But those cases are distinguishable.

Start with *Speech First*. That case dealt with the University of Michigan's "Bias Response Team," a university body that received individual students' reports of allegedly discriminatory behavior. 939 F.3d at 762. If the Team received a report, it could "invite" the accused offender to a voluntary meeting. *Id*. But don't let the friendly titles fool you: the Team could investigate the offender and refer him to the police or the University's Title IX office. *Id.* at 762–63.

A group of students sued the university, arguing that the Team's program violated the First Amendment. The University claimed the students lacked standing since they hadn't suffered an injury. Why? The University asserted that the referrals to the Title IX office weren't punitive. We disagreed because while the referral itself wasn't punitive, it began the "process[] which could lead to" punishment. *Id.* at 765 (emphasis omitted). Additionally, the Response

Team "appear[ed] to have punitive authority," because an invitation to meet with it carried an "implicit threat" of referral. *Id.* at 764–65 (emphasis omitted). Thus, we held that the students' speech was objectively chilled and that they'd suffered an Article III injury. *Id.*

But *Speech First* doesn't control here. That case hinged on the fact that the Response Team was a constituent part of the University. And the University indisputably had the power to punish students. That's why the Response Team "appear[ed]" to have punitive authority. *Speech First*, 939 F.3d at 764; *see also id.* at 765 (explaining that the Response Team is a "mechanism" instituted "by the University"). If, as *Speech First* acknowledged, only the University could punish students, then the Response Team's intimidation derived from its relationship with the University.

Somberg's prosecutor, on the other hand, is not a subsidiary part of the court. She can't claim the mantle of judicial authority when dealing with opposing parties. *Cf. Bloom v. State of Ill.*, 391 U.S. 194, 207–09 (1968). In that respect, she's no different from any other litigant asking the court to hold Somberg in contempt. In *Speech First* terms, Somberg's prosecutor is less like a Response Team and more like an individual student. And nothing in *Speech First* suggested that the plaintiffs could have enjoined a student from filing a complaint with the Response Team.

Consider another example: Suppose a state passed a law abridging the freedom of speech. Now suppose a citizen violated that law in his backyard. If the police credibly threatened to arrest him for that conduct, he could likely enjoin them from enforcing the law against him. But what if his neighbor—who happens to work for the state—threatens to *call* the police? We wouldn't grant an injunction against the neighbor because the neighbor—unlike the police—can't bring the coercive power of the state to bear on the citizen. Moreover, an injunction running against the neighbor wouldn't stop any other neighbor from calling the police. Nor would it prevent police from noticing the righteous scofflaw's disobedience on their own.

Such is the case here. It's one thing to say that when a plaintiff sues the head of an entity with punitive power (*i.e.*, the University), that plaintiff can enjoin lower-level actors that kick-start the punitive process (*i.e.*, the Response Team). It's another thing entirely to say that a

plaintiff may enjoin independent third parties (*i.e.*, the prosecutor) who report unlawful conduct to the punishing entity (*i.e.*, the court). Somberg seeks to do the latter. But *Speech First* didn't blaze that trail, and neither will we.

By the same token, a motion for contempt doesn't carry the same "implicit threat" of consequences as an invitation to meet from the Response Team. The Response Team had the full power to make good on its "implicit threat" to refer students who declined to meet with them. *Speech First*, 939 F.3d at 765; *see also Fischer v. Thomas*, 52 F.4th 303, 309 (6th Cir. 2022) (per curiam); *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (explaining that plaintiff had standing to sue defendants because they "ha[d] the power to discipline" the plaintiff). By contrast, to whatever extent a contempt motion carries an "implicit threat" of being held in contempt, the prosecutor has no ability to follow through because she doesn't wield the contempt power. Any threat of contempt from the prosecutor thus doesn't carry the same weight as the threat of a referral from the Response Team. *Cf. In re Contempt of Murphy*, 7 N.W.3d 72, 78 (Mich. Ct. App. 2023).

To the extent Somberg and the dissent see *Speech First* as setting out a broader proposition, they run directly into recent Supreme Court precedent foreclosing such a reading. Just this year, in *Murthy v. Missouri*, the Court explained that a plaintiff lacked standing to challenge the government's actions because a third-party social media site, an "independent actor," exercised its "own judgment" when sanctioning the plaintiff. 144 S. Ct. 1972, 1988 (2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). In doing so, the Court made clear that when one party encourages a second actor to take some adverse action against a plaintiff, the plaintiff doesn't have standing if the second actor retains a degree of independent judgment. To the degree *Speech First* held otherwise, that holding doesn't survive *Murthy*. What remains is a narrow reading: a plaintiff satisfies the standing requirement if the state actor with power to inflict the penalty makes an implicit threat of imminent consequences. That didn't happen here.

Similarly, *Kareem* doesn't save Somberg. 95 F.4th 1019 (6th Cir. 2024). There, a citizen sought pre-enforcement review of Ohio's "ballot selfie" laws. *Id.* at 1021. Those criminal laws forbade voters from posting pictures of their completed ballots online, which the plaintiff wanted

to do. *Id.* So she sued the Ohio Secretary of State, the county board of elections, and the county prosecutor. *Id.* Kareem had standing to sue because each of the actors she sued, by Ohio law, enforced the ballot selfie laws. *See id.* at 1027. Thus, each defendant played a direct role in enforcing the election code. *See id*. Here, by contrast, the prosecutor in this case plays only a bit part in a contempt proceeding. Indeed, the prosecutor's role is no different from any other counterparty requesting that the court hold Somberg in contempt.

The fact Somberg's case centers on contempt is significant. Contempt is "peculiar within our system." Ronald Goldfarb, *The Constitution and Contempt of Court*, 61 Mich. L. Rev. 283, 283 (1962). It has both statutory as well as judge-made components and draws heavily from an ancient practice rooted in English common law. *Id.* at 283–85. In the early Republic, courts had power to punish contempt summarily. *See Bloom*, 391 U.S. at 203 (citing *Anderson v. Dunn*, 6 Wheat 204, 227–28 (1821)). While courts' power to punish contempt has retreated from days past, *see id.*, contempt remains "*sui generis*" in that it is primarily the purview of courts, not parties. Goldfarb, *The Constitution and Contempt of Court*, 61 Mich. L. Rev. at 283. This distinction is material. If the Electronics Rule were a criminal statute enforceable by prosecution, Somberg's case would deserve the same treatment as *Kareem*. But contempt isn't a crime that hinges on the prosecution. Instead, it depends on the court.

* * *

In sum, Somberg has failed to demonstrate that he has standing. Thus, we vacate the district court's order granting summary judgment and remand with instructions to dismiss for lack of jurisdiction.

---

**DISSENT**

---

MATHIS, Circuit Judge, dissenting. Attorney Nicholas Somberg appeals the district court's grant of summary judgment to Oakland County, Michigan prosecutor Karen McDonald on his First Amendment claim. Somberg contends that he has a First Amendment right to record virtual judicial proceedings that take place in Oakland County's 52nd Judicial District Court despite that court's policy barring such recording. McDonald tried, and failed, to have Somberg held in contempt after he took a screenshot of a virtual hearing. Somberg then sued McDonald to enjoin her from pursuing contempt proceedings against him. I would affirm the district court's decision.

The majority does not reach the merits because it holds that Somberg lacks standing. I respectfully dissent.

**I.**

I begin with a bit of background to put this matter in the proper context. In the wake of the COVID-19 pandemic that hit Michigan state courts in early 2020, the Michigan Supreme Court issued Administrative Order 2020-6 to allow judges to conduct proceedings virtually. On May 1, 2020, the 52nd Judicial District Court adopted the Electronics Rule. The Rule prohibits anyone from using "a portable electronic device to take photographs or for audio or video recording, broadcasting, or live streaming unless that use is specifically allowed by the judge presiding over that courtroom through a written Order." R. 1-4, PageID 31. A violation of the Electronics Rule can lead to a person being held in contempt of court, which subjects such person to 93 days' imprisonment, up to a $7,500 fine, or both imprisonment and a fine.

On May 27, 2020, Somberg represented a client during a virtual judicial proceeding in the 52nd Judicial District Court. Somberg took a photographic screenshot of the proceedings and posted the screenshot on social media. The next day, McDonald's predecessor purported to initiate contempt proceedings by filing a motion to show cause. *See* Mich. Ct. R. 3.606(A).

On July 10, the Michigan district court dismissed the contempt proceedings because the motion to show cause was procedurally defective.

Four days after the dismissal of the contempt proceedings, Somberg sued the prosecutor. After the United States District Court for the Eastern District of Michigan denied Somberg's motion for summary judgment, it granted McDonald's motion for summary judgment.

McDonald did not argue that Somberg lacked standing before the district court. She also did not challenge standing during her initial briefing before us. It was only after we asked the parties to address the issue that McDonald first suggested that Somberg lacked standing.

## II.

Article III of the U.S. Constitution requires plaintiffs to have standing before a federal court has the power to adjudicate their case. *See* U.S. Const. art. III, § 2; *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024). This means that Somberg must show that: (1) he suffered an injury in fact, (2) that the defendant caused the injury, and (3) that the court can redress the injury with a decision in his favor. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). He has done so for his First Amendment claim.

### A.

To establish an injury in fact, Somberg must show that he suffered harm "that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). This ensures he has a "personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation omitted).

True, McDonald has not yet successfully enforced a violation of the Electronics Rule against Somberg. But "the Supreme Court has emphasized that a law need not be enforced against a speaker to pose a threat to [his] speech." *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1022 (6th Cir. 2024) (citing *Susan B. Anthony List*, 573 U.S. at 158). If Somberg shows the following, then he can establish "an imminent injury in fact under the First Amendment": (1) he has an intent to engage in activity that the First Amendment arguably protects; (2) that this activity is arguably prohibited by the Electronics Rule; and (3) "that there

Case: 23-1872 Document: 34-2 Filed: 08/28/2024 Page: 11



exists a 'credible threat of enforcement' for engaging in that" activity. *Id.* (quoting *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022) (per curiam)). Somberg checks all three boxes.

Somberg has produced evidence that he has recorded and intends to continue recording courtroom proceedings. Specifically, Somberg stated in a declaration:

> I want to, intend to, and desire to make recordings of public proceeding[s] being publicly broadcasted via live-streamed court proceedings for reposting, broadcasting, commentary, expressive activity, and advocacy, but have been prevented by the fear of the credible and ongoing threat of prosecution by Oakland County Prosecutor's Office undertaken in violation of the First Amendment.

R. 7-11, PageID 146. Somberg's actions are arguably protected by the First Amendment under a right-to-record theory.

Also, the Electronics Rule proscribes Somberg's intended conduct. A plain reading of that policy demonstrates that it would apply to his proposed recording of virtual court proceedings.

But has Somberg shown a credible threat of prosecution? To make such a showing, Somberg must first establish "an actual and well-founded fear that" McDonald will attempt to enforce a violation of the Electronics Rule against him. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). Somberg's declaration establishes that fear of enforcement.

In addition to Somberg's "self-censorship" due to fear that McDonald will seek to have him held in contempt for violating the Electronics Rule, *see id.*, Somberg must also show a combination of the following factors: (1) "a history of past enforcement against [him] or others"; (2) "enforcement warning letters sent to [him] regarding [his] specific conduct"; (3) "an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action"; and (4) "a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff," *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016) (explaining that allegations of "a subjective chill" alone are not enough to establish a credible threat of enforcement). "[T]hese 'factors are not

exhaustive, nor must each be established.'" *Kareem*, 95 F.4th at 1023 (quoting *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 550 (6th Cir. 2021)).

Multiple factors weigh in Somberg's favor. First, McDonald's office attempted to have Somberg held in contempt. "[P]ast enforcement is not necessary to establish a credible threat of enforcement[.]" *Id.* at 1025. But such prior enforcement "against the same conduct is good evidence that the threat of enforcement is not chimerical[.]" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1049 (6th Cir. 2015) (quoting *Susan B. Anthony List*, 573 U.S. at 164). Even initiating a formal enforcement process "itself is chilling." *Kareem*, 95 F.4th at 1026 (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019)). Second, McDonald has not disavowed attempting to enforce a violation of the Electronics Rule against Somberg. And third, a violation of the Electronics Rule is easier to enforce because anyone can initiate contempt proceedings "[f]or a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits." Mich. Ct. R. 3.606(A).

Consider *Kareem*. There, the plaintiff challenged Ohio's "ballot selfie" law that criminalized displaying a photograph of a marked ballot. *Kareem*, 95 F.4th at 1021–22. The plaintiff "took just such a photograph" that "she wished to display" yet chose not to because of her fear "that Ohio's ballot prohibitions could be enforced against her." *Id.* at 1022. As evidence of a credible threat of enforcement against her, she pointed to a prior instance of an election official ordering "an individual to take down a ballot photograph that had been posted online" which caused that individual to comply. *Id.* at 1026. The district court found that the plaintiff lacked standing, giving "little weight to this instance of removal because it was never referred for prosecution or subject to any threat of enforcement proceedings." *Id.* (internal quotation marks omitted). We disagreed, reasoning that even "a directive by an official can establish a credible threat of enforcement because it initiates the formal [enforcement] process, which itself is chilling." *Id.* (alteration in original) (internal quotation marks omitted). No further evidence of enforcement was necessary, we explained, because the election official ordered the individual "to remove the photograph, the individual complied," and "potential expression" thus was chilled. *Id.*

The majority's attempt to distinguish *Kareem* falls flat. The majority suggests *Kareem* is inapplicable because that case involved defendants attempting to enforce criminal laws where this case involves contempt proceedings. But that misunderstands the nature of the contempt proceedings at issue here.

Recall that McDonald's office sought to have Somberg held in contempt under Michigan Court Rule 3.606(A). That rule governs indirect criminal contempt proceedings. *In re Contempt of Henry*, 765 N.W.2d 44, 53, 57 (Mich. Ct. App. 2009) (per curiam). "Criminal contempt *is a crime* in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *In re Grand Jury Proc. No. 93,164*, 179 N.W.2d 383, 388 (Mich. 1970) (emphasis added) (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)). A prosecutor or a private party can initiate and prosecute indirect criminal contempt claims. *In re Contempt of Henry*, 765 N.W.2d at 53. And "a criminal contempt proceeding requires some, but not all, of the due process safeguards of an ordinary criminal trial." *In re Contempt of Dougherty*, 413 N.W.2d 392, 395 (Mich. 1987). To that end, a defendant has the right to have notice of the charges against him, the right against self-incrimination, the right to counsel, the presumption of innocence, and, importantly, the right to a hearing where the prosecuting party must prove the contempt charge beyond a reasonable doubt. *DeGeorge v. Warheit*, 741 N.W.2d 384, 388 (Mich. Ct. App. 2007) (per curiam); Mich. Comp. Laws § 600.1711(2).

Somberg has sufficiently established an injury in fact. I consider next whether McDonald caused the alleged injury.

**B.**

Somberg has satisfied the causation prong. "To establish causation, a plaintiff must show a 'causal connection between the injury and the conduct complained of.'" *Durham v. Martin*, 905 F.3d 432, 434 (6th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). This requires a showing that Somberg's claimed injury flows from McDonald's conduct "rather than the plaintiff's own actions or the actions of a third party." *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 592 (6th Cir. 2022). But beyond that, proving a causal connection is a

"relatively modest" burden. *Id.* (quotation omitted). "Any harm flowing from the defendant's conduct, even indirectly, is said to be fairly traceable." *Id.* (internal quotation marks omitted).

McDonald caused Somberg's alleged injuries. Her office sought to have Somberg held in contempt after he screenshotted a virtual court proceeding and posted it on social media. But McDonald's office was unsuccessful only because the motion to show cause failed to comply with the Michigan Court Rules. Somberg filed suit against McDonald just days after the dismissal of McDonald's contempt request.

McDonald has made no argument that Somberg cannot establish causation. But the majority argues that Somberg cannot trace his injury to McDonald because the 52nd Judicial District Court enforces the Electronics Rule. That argument, however, runs headlong into *Speech First*. That case involved allegations that the University of Michigan's "Bias Response Team," which served as the primary authority through which individual students could report instances of peer discrimination, violated the alleged offenders' First Amendment rights. *Speech First*, 939 F.3d at 762–63. After receiving a complaint, the Bias Response Team "invited" alleged offenders to a "voluntary" meeting and then had the power to investigate the alleged offenders and refer them to the police, the university's office of student rights and responsibilities, or other school resources. *Id.* Although the Bias Response Team's referrals did not "punish a student" and only initiated "the formal investigative process," we held that this chilled the alleged offenders' speech such that they suffered an Article III injury. *Id.* at 764–65. This was because the Bias Response Team's invitations subjected "students to processes which could lead to those punishments" and the Team's apparent "punitive authority" implicitly threatened referrals. *Id.*

The same rationale applies here. McDonald filing a motion to show cause does not punish Somberg. Still, it does initiate contempt proceedings against him. And McDonald can prosecute a contempt claim against him. This is enough to show causation.

The majority also argues that Somberg cannot establish causation because the 52nd Judicial District Court, not the prosecutor, enforces criminal contempt claims. It is accurate that the state court must determine whether the defendant has acted in contempt of court and impose

any punishment. But that occurs only after the prosecuting party has proven the defendant guilty of contempt beyond a reasonable doubt. *DeGeorge*, 751 N.W.2d at 388, 390. The majority's argument is like saying parties do not have standing to try to enjoin a prosecutor from enforcing criminal laws because other parties make the guilt determination (the jury) and impose the sentence (the judge). But our precedent confirms that is not the case. *See Kareem*, 95 F.4th at 1020, 1027; *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034–36 (6th Cir. 2022). And that reasoning should apply here.

**C.**

Redressability requires a showing that Somberg's alleged "injury will be redressed by" a decision in his favor. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Causation and redressability are "flip sides of the same coin." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (quotation omitted). Thus, "[i]f a defendant's action causes an injury, enjoining the action . . . will typically redress the injury." *Id.* at 381. Because Somberg has shown that McDonald caused his injury, granting Somberg injunctive relief against McDonald would redress that injury.

The majority contends that enjoining McDonald from seeking to hold Somberg in contempt would not redress his injuries. This is because, according to the majority, Michigan courts can hold him in contempt sua sponte. But Somberg does not seek to enjoin a Michigan court from initiating criminal contempt proceedings against him or from holding him in contempt sua sponte; he seeks only to enjoin McDonald from initiating and prosecuting him for indirect criminal contempt.[1]

**III.**

Although Somberg has standing to sue McDonald, his claim fails on the merits. Somberg sued McDonald under 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must prove: (1) "a right secured by the United States Constitution," and (2) "the deprivation of that right by a

[1]To be clear, even if a Michigan court can initiate indirect criminal contempt proceedings against an individual, a prosecutor or a private party must prove to the court beyond a reasonable doubt that the offending party has violated a court order or rule. *See DeGeorge*, 741 N.W.2d at 388.

person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quotation omitted). Somberg claims he has a right, under the First Amendment, to record court proceedings despite the Electronics Rule's prohibition on him doing so.

The First Amendment bars the government from "abridging the freedom of speech." U.S. Const. amend. I. Flowing from this prohibition is the First Amendment's protection of the spoken or written word and expressive conduct—conduct that is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)). Somberg seems to argue that his right to record is one of freedom of expression.

We use a three-step analysis to determine whether the government has violated a person's free-speech rights:

> (1) we ask whether the speech is protected under the First Amendment; (2) if so, using the public-forum doctrine, we ascertain whether the applicable forum is public or nonpublic; and (3) applying the appropriate standard for the forum, we ask whether the government's prohibition on speech passes muster under the First Amendment.

*S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 559 (6th Cir. 2007) (citing *Parks v. City of Columbus*, 395 F.3d 643, 647 (6th Cir. 2005)).

The Supreme Court has not decided whether the act of recording is expressive conduct protected by the First Amendment. Expressive conduct includes that which was intended to "convey a particularized message" that would likely "be understood by those who view it." *Johnson*, 491 U.S. at 404 (quotation omitted). Still, "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). And the Court has "extended First Amendment protection" to conduct that is "inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). What is more, the Court has held "that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952).

But what about the act of recording itself? Does that act, without more, convey a message? Some courts say yes:

> It defies common sense to disaggregate the creation of the video from the video or audio recording itself. The act of recording is itself an inherently expressive activity; decisions about content, composition, lighting, volume, and angles, among others, are expressive in the same way as the written word or a musical score.

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018). Other courts seem to punt the question, evaluating recording bans under the First Amendment's right to access information about public officials instead. *See, e.g.*, *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 182–83 (3d Cir. 1999). Further still, some courts have explicitly held that the act of capturing an image "does not partake of the attributes of expression; it is conduct, pure and simple." *D'Amario v. Providence Civic Ctr. Auth.*, 639 F.Supp. 1538, 1541 (D.R.I. 1986). At any rate, we have explained that "[a] prohibition on recording speech is not a prohibition on speaking." *Hils v. Davis*, 52 F.4th 997, 1001 (6th Cir. 2022).

Assuming an act of recording is expressive conduct protected by the First Amendment, is the courtroom a public or nonpublic forum? *S.H.A.R.K.*, 499 F.3d at 559. We have already answered this question: "The courtroom is a nonpublic forum . . . where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir. In fact, the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech." *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citations omitted).

The final task is to determine whether the Electronics Rule limiting speech in a nonpublic forum violates the First Amendment under the appropriate standard. "The government may lawfully restrict speech in a nonpublic forum" if "the restrictions are viewpoint neutral and reasonable" considering "the purpose served by the forum." *Helms v. Zubaty*, 495 F.3d 252, 257 (6th Cir. 2007); *accord Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985). The government's restriction "need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808. Moreover, "[t]he First Amendment does not

forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose." *Id.* at 811.

The Electronics Rule is viewpoint neutral. It prohibits all electronic recordings of all judicial proceedings conducted via Zoom without the state court's permission. The regulation "places no restrictions on . . . either a particular viewpoint or any subject matter that may be discussed[,]" or, here, recorded. *See Hill v. Colorado*, 530 U.S. 703, 723 (2000).

The Electronics Rule need only be reasonable considering the purposes of the courtroom. The Rule protects the legitimate government interest of ensuring criminal defendants receive fair trials by lessening courtroom distractions, preventing juror and witness intimidation, and guarding against online influence. Banning recordings via portable electronic devices is, at a minimum, a reasonable method for protecting this interest. *See Estes v. Texas*, 381 U.S. 532, 545–57 (1965); *Hils*, 52 F.4th at 1004. And so, even if recording is an expressive act protected by the First Amendment, the Electronics Rule is constitutional.

Somberg points to cases from our sister circuits that he says require a different result. But most of those cases hold that a right to record government officials engaged in their duties in a public place exists under the Supreme Court's "right to gather" jurisprudence, not its freedom-of-expression analysis. *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) (finding that the First Amendment confers the right "to gather news 'from any source by means within the law'" (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681–82 (1972))).

Take, for example, the First Circuit's decision in *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011). The *Glik* court considered whether there was "a constitutionally protected right to videotape police carrying out their duties in public[.]" *Id.* at 82. Because "the First Amendment goes beyond the protection of the press and the self-expression of individuals to prohibit the government from limiting the stock of information from which members of the public may draw[,]" the *Glik* court held that there was a right to record police doing their jobs in a public place. *Id.* (quoting *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783 (1978)).

Other courts have reached similar conclusions under similar reasoning. *See, e.g.*, *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding that the claimants had a First

Case: 23-1872 Document: 35-2 Filed: 08/28/2024 Page: 19



Amendment right to record police conduct on public property as part of their "right to gather information about what public officials do on public property"); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (recognizing a "First Amendment right to film matters of public interest"); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) (rejecting arguments to analyze the case under a freedom of expression analysis as it was "not about people attempting to create art with police as their subjects" and holding, under a right to access analysis, that there is a right to record police performing their official duties); *see also Turner v. Lieutenant Driver*, 848 F.3d 678, 687–90 (5th Cir. 2017) (blending the right to access analysis with freedom of expression analysis to conclude that "[p]rotecting the right to film the police promotes First Amendment principles").

Even more to the point, none of the cases Somberg points to concerns a right to record live courtroom proceedings. The same is true for those cases where courts have held that the act of recording is expressive conduct. *See Animal Legal Def. Fund*, 878 F.3d at 1203–05 (finding unconstitutional a law that prohibited recordings of private agricultural production facilities); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595–96, 606 (7th Cir. 2012) (striking down an eavesdropping statute that prevented individuals from recording police officers performing their jobs in public places).

**IV.**

For these reasons, I respectfully dissent from the majority's conclusion that Somberg lacks standing. I would affirm the district court's judgment in McDonald's favor.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1872

**FILED**
Aug 28, 2024
KELLY L. STEPHENS, Clerk

NICHOLAS PAUL SOMBERG,

Plaintiff - Appellant,

v.

KAREN D. MCDONALD, in her official capacity as Prosecutor of Oakland County, Michigan,

Defendant - Appellee.

Before: BATCHELDER, THAPAR, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk